**STATE of Missouri, Respondent,**

v.

**Sheila EDMONDS, Appellant.**

**No. 51795.**

Missouri Court of Appeals,
Eastern District,
Division One.

April 7, 1987.

Motion for Rehearing and/or
Transfer Denied
May 12, 1987.

Application to Transfer Denied
June 16, 1987.

James S. McKay, St. Louis, for appellant.

William L. Webster, Atty. Gen., Carrie Francke, Sp. Asst. Atty. Gen., St. Louis, for respondent.

CRIST, Judge.

Defendant was convicted by a jury of robbery in the second degree for an incident occurring outside the Marriot Hotel in downtown St. Louis and burglary in the first degree and stealing over $150 for an incident occurring inside the Clarion Hotel. She was sentenced to five years' imprisonment for the robbery, a consecutive five years' imprisonment for the burglary, and a concurrent one year's imprisonment for the stealing. We affirm.

On October 25, 1985, Gordon Warner and Melvin Hillman were visiting St. Louis for the twentieth anniversary of the completion of the Arch. They had participated in the construction of the Arch. That evening they had dinner at the home of a former co-worker on the project and left around midnight to return to their room at the Clarion Hotel. They were starting to get ready for bed when they decided they were thirsty. Each man had emptied his pockets, including his money, onto a dresser.

Hillman, a 78 year old retiree living in Florida, left the room looking for a soda machine. As he walked through the hallway, he was approached by two black women, apparently prostitutes, who solicited him. One of the women, later identified as defendant, wore a blonde wig. The second woman, later identified as co-defendant Patty Winn, had a dark wig.

The women grabbed Hillman by the arms. He began kicking at the door to his room. Warner opened the door. The woman with the dark wig went past Warner into the room. Defendant acted as a diversion by remaining near the doorway inside the room, making sexually suggestive remarks to Warner and touching his leg. By the time Hillman was able to get past Warner and defendant, the woman with the dark wig was leaving the room and called from the elevator for defendant to come with her. Defendant indicated she'd leave if Warner walked her out. Defendant, escorted briefly by Warner, left and went to the elevator. The whole incident lasted only a couple of minutes.

Hillman and Warner discovered their money was missing from the top of the dresser within the room. Warner was missing $150 and a money clip. Hillman was missing $229 in cash, credit cards, a driver's license and a money clip. They notified the night manager who called the police. A hotel employee found Warner's money clip, without money in it, in the elevator.

Later that evening, the St. Louis police asked the two men to view a lineup. Each identified defendant as the woman with the blonde hair and Patty Winn as the woman with the dark hair. Police later recovered Hillman's credit cards inside an ashtray near one of the hotel elevators.

Shortly after the incident at the Clarion, Gary Thomas arrived outside the Marriot Hotel in downtown St. Louis in his van. As he was getting out of his van, he was approached by a woman in a red sweater. He later identified this woman as defendant. Defendant solicited him for a "date," and began rubbing his leg. He indicated he was not interested and turned to retrieve an alarm beeper from his van. As he did so, defendant grabbed his wallet. Thomas turned to face her and a struggle ensued over the cash which was then in defendant's hands. Defendant told him her girl friend had a gun and would "blow [his] head off." At that point, a second woman appeared wearing a "tiger" colored sweater, but Mr. Thomas did not see a gun. Defendant kicked Mr. Thomas in the groin area. The second woman, later identified as Patty Winn, hit him with a high-heeled shoe. Both women then fled on foot. Thomas started to pursue them but fell over a garbage can and lost his boot. He returned to his van and began driving through downtown St. Louis looking for the women or a police officer.

Thomas gave his description of the two women to the police. The police realized the description was similar to those provided in the Clarion Hotel incident. The women were apprehended. Thomas returned to the police station where he viewed a lineup and identified defendant and Patty Winn. Defendant presented no evidence.

■ Defendant challenges the sufficiency of the evidence to support her conviction of stealing over $150. She alleges there was insufficient evidence to show she actively or affirmatively participated in the stealing. We view the evidence in the light most favorable to the State. *State v. Garrett*, 627 S.W.2d 635, 642[17] (Mo. banc 1982). All contrary evidence and inferences will be disregarded. *State v. Williams*, 623 S.W.2d 552, 553[2] (Mo.1981). Affirmative participation in a crime may be shown by circumstantial evidence. *State v. Mendoza*, 661 S.W.2d 672, 674[1] (Mo.App. 1983).

■ Defendant and Patty Winn forced themselves into the hotel room occupied by Hillman and Warner. The inference from the evidence was that Patty Winn appropriated Hillman's and Warner's money clips while defendant occupied the two men with her "chatter." Thus, defendant was guilty of the stealing offense because of the principle of accomplice liability. § 562.041.1(2), RSMo 1986. *State v. Gannaway*, 649 S.W.2d 235, 239 (Mo.App.1983). The totality of the circumstances justified the jury in finding defendant aided Patty Winn in the stealing of the money clips.

■ Defendant also challenges the sufficiency of the evidence for her burglary conviction because it is claimed there was no showing of an intent to steal. For the reasons stated above, there was sufficient evidence to sustain her conviction for burglary. Defendant had more than a "mere acquiescence" to the crime. She was in partnership with Patty Winn.

■ Defendant asserts improper closing argument. The prosecutor stated the arguments of the attorneys for defendant and Patty Winn were nothing but a bunch of hogwash, full of lies and deceit, just as those defendants were. Upon objection, the prosecutor withdrew the comments and the jury was instructed to disregard the last statements made by the prosecutor. No motion for new trial was made. The trial court has broad discretion as to the latitude to be permitted in counsel's closing arguments. *State v. Hampton*, 653 S.W.2d 191, 195 (Mo. banc 1983). We find

no clear abuse of discretion here. Further, defendant received all relief requested. *State v. Fanning,* 647 S.W.2d 177, 178 (Mo.App.1983).

Defendant also objects to the prosecutor's characterization that defense counsels' arguments and an acquittal based on the arguments would be a "slap in the face" to the victims. For the reason defense counsels had suggested much wrongdoing on the part of the victims, the prosecutor was well within his rights to retaliate by calling these arguments a "slap in the face" to the victims. *State v. Wood,* 596 S.W.2d 394, 403 [28] (Mo. banc 1980).

Defendant objects to the in-court identification made by the victims of defendant. She objects to the fact the trial court made her don a wig allegedly worn by the perpetrator of the offenses.

The State's evidence included three in-court identifications by the victims of the offenses charged. The procedures employed for each victim's identification were the same. First, the prosecutor asked a victim to identify a photograph of the line-up he viewed and to identify the perpetrators. The victim was then asked to point out the perpetrators if they were in the courtroom. The prosecutor then asked the court to order the defendants to place wigs seized from them at the time of their arrest on their heads. The victim was then asked to re-identify the defendants and each victim did so. The initial identification occurred prior to the donning of the wigs and later identification could not be considered unduly suggestive. There was no objection to these initial identifications. Accordingly, there was no error having the defendant put on the wig. Furthermore, wearing the wig was not evidence of a communicative nature so as to involve the Fifth Amendment. *State v. Walls,* 637 S.W.2d 812, 814 (Mo.App.1982).

Judgment affirmed.

SATZ, P.J., and KELLY, J., concur.