**STATE of Missouri, Plaintiff–Respondent,**

v.

**Forest John WANNER, Defendant–Appellant.**

No. 53074.

Missouri Court of Appeals, Eastern District, Division Three.

May 24, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 22, 1988.

James Jay Knappenberger, Clayton, for defendant-appellant.

Howard Jon Marcus, Asst. Pros. Atty., Clayton, for plaintiff-respondent.

KELLY, Judge.

Forest John Wanner appeals from a jury conviction of third degree assault, § 565.070 RSMo 1986, and resisting arrest, § 575.150 RSMo 1986. The trial court, having found him to be a persistent offender, § 558.016 RSMo 1986, sentenced him to one year imprisonment and to six months imprisonment, respectively. Appellant was fined $1,000 for each offense. We affirm in part and reverse in part.

The state's evidence showed that on August 20, 1986, Officer Keeler was on duty and parked in his patrol car near the intersection of Geyer and Essex in Kirkwood, Missouri. At approximately 1:30 a.m., he heard a loud motorcycle engine accelerating. Upon spotting the motorcycle, he immediately turned on his spotlight and his red lights in an attempt to stop the vehicle. The appellant stopped at a stoplight, ignored Officer Keeler, then continued at a regular pace across the intersection. The appellant finally brought his motorcycle to a halt in front of an alley. Officer Keeler exited his car and approached the appellant; however, the appellant put his motorcycle in gear and drove approximately 75 feet. Officer Keeler again entered his car, followed the appellant, and attempted to roll down the window on his right side to tell him to pull over and stop. The appellant then pulled away and accelerated traveling at an estimated average speed of 80 miles per hour.

Officer Pope joined Officer Keeler in the pursuit. While Officer Pope chased the appellant into a condominium complex, Officer Keeler parked his patrol car at the intersection of Brooksgate Manor and Geyer and opened his front door. At this point, Officer Keeler observed the motorcycle heading directly towards him. He began waving his hand and yelling, "stop, police," as he jumped back and hit the door of his patrol car while drawing his revolver. The appellant drove past the officer with about six inches of clearance. The officer fired one shot. Officer Keeler testified that the appellant could have avoided the police car by passing on the other side of the car or by cutting through a flat grassy area.

At trial, Officer Pope testified that he saw the appellant drive by Officer Keeler. The motorcycle then stopped a few blocks away. Officer Pope removed the appellant from the motorcycle and handcuffed him. At that point, Officer Pope observed blood and a bullet hole and uncuffed the appellant. He then administered C.P.R. and an ambulance was called to the scene.

■ Appellant first contends that the trial court erred in submitting a third degree assault instruction based on MAI–CR3d 319.16 because the instruction was not supported by the evidence. The record shows the instruction was requested by defendant. It is well-settled that the appellant cannot assert error with respect to an instruction which appellant himself requested. *State v. Preston,* 673 S.W.2d 1, 9 [21] (Mo. banc 1984); *State v. Euell,* 583 S.W.2d 173, 178 [4] (Mo. banc 1979); *State v. Wilson,* 607 S.W.2d 751, 752 [2] (Mo.App.1980); *State v. Medley,* 588 S.W.2d 55, 60 [9] (Mo.App.1979). Accordingly, appellant's first point is denied.

■ Appellant next contends the trial court erred in submitting the verdict director on Count II for resisting arrest, Instruction 11, based on MAI–CR3d 329.60.

For instructions to be submitted they "must be supported by substantial evidence and the reasonable inferences to be drawn therefrom." *State v. Daugherty,* 631 S.W.2d 637, 639 [1] (Mo.1982); *State v. Price,* 684 S.W.2d 566, 568 [4] (Mo.App.1984). We find that instruction 11 was erroneously submitted to the jury because the evidence the state elicited at trial is insufficient to sustain a conviction for the offense charged.

The relevant portion of Instruction 11 reads as follows:

## INSTRUCTION NO. 11

As to Count II, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or about August 20, 1986, in the County of St. Louis, State of Missouri, Ptn. Cecil Keeler was a law enforcement officer, and

Second, that Cecil Keeler was making an arrest of the defendant for failure to yield to an emergency vehicle, and

Third, *that defendant knew that a law enforcement officer was making an arrest of the defendant, and*

Fourth, *that for the purpose of preventing the officer from making the arrest, the defendant resisted the arrest by fleeing from that officer,*

then you will find the defendant guilty under Count II of resisting arrest. (emphasis added).

The offense of resisting arrest hinges upon the fact that an actual arrest must at least be contemplated by a law enforcement officer. § 575.150 RSMo 1986. However, in this case, the fact, as testified to by the officer, was that he was *not* going to arrest the appellant. The relevant portion of the direct examination of Officer Keeler by the prosecutor reads as follows:

PROSECUTOR: Officer Keeler, what if anything did you do when you saw this motorcycle?

OFFICER KEELER: I turned my spotlight on and my red lights and flashed my spotlight across it a couple times and pulled up behind him as he passed in front of me. I was sitting in the driveway at the time.

PROSECUTOR: What did the motorcyclist do?

OFFICER KEELER: He pulled up to the stop sign like he hadn't seen me and stopped for the stoplight. Then he proceeded at a regular pace across the intersection of Essex Avenue, and there is a Majik Market right across the street on the west side and he pulled down alongside the Majik Market. There is an alley behind it and he stopped right about where the alley begins.

PROSECUTOR: What did you do then?

OFFICER KEELER: I opened my car door and I got out.

PROSECUTOR: What did he do then?

OFFICER KEELER: He put his motorcycle in gear and he just rolled forward. He didn't really go fast. He just rolled forward about halfway down the block again and then stopped again.

PROSECUTOR: What did you do with your car then?

OFFICER KEELER: I pulled up alongside of him. As I did, he pulled up to the corner of Central and Geyer, which is only about another 50 or 75 feet.

PROSECUTOR: Were you in the car at this time?

OFFICER KEELER: Yes.

PROSECUTOR: What did you do then?

OFFICER KEELER: I leaned over to the right side to roll my window down to tell him to pull over and stop.

PROSECUTOR: *What was your intention after you stopped him? What did you want to do?*

OFFICER KEELER: *I wanted to warn him.*

(emphasis added).

The officer testified that he *initially sought to stop appellant only to warn him about his driving habits.* When Officer Keeler first observed the appellant, he never intended to effecuate an arrest. Therefore, appellant could not have resisted an arrest when he fled from the officer. Accordingly, we reverse the appellant's conviction on Count II, resisting arrest.

■ The appellant next contends that the trial court erred in submitting to the jury instruction No. 4 defining reasonable doubt, based on MAI–CR3d 302.04, because the instruction allows a jury to be "firmly convinced of a defendant's guilt" as opposed to being guilty "beyond a reasonable doubt."

The recent Missouri Supreme Court decision of *State v. Murray,* 744 S.W.2d 762, 771 [13] (Mo. banc 1988) is dispositive of this issue. In *Murray,* the appellant contended the trial court erred by refusing to

modify the definition of proof beyond a reasonable doubt contained in MAI–CR2d (now MAI–CR3d 302.04). Particularly, the appellant argued, identical to our issue on appeal, that defining "reasonable doubt" as "doubt based upon reason and common sense" and defining "proof beyond a reasonable doubt" as "proof that leaves you firmly convinced of the defendant's guilt" dilutes the state's burden of proof. The *Murray* court stated:

> This Court has recently held that the 'firmly convinced' language, when read in the context of MAI–CR2d 2.20 as a whole, properly instructs the jury on the required burden of proof. *See State v. Guinan*, 732 S.W.2d 174, 178 (Mo. banc). *cert. denied*, — U.S. —, 108 S.Ct. 308, 98 L.Ed.2d 266 (1987). The state's burden of proof is not diminished by MAI–CR 2.20's definition of reasonable doubt. *Murray*, 744 S.W.2d 771 [13].

Accordingly, appellant's point is denied.

■ Appellant next contends that the trial court abused its discretion by excluding impeachment of Officer Pope by refusing to allow appellant: (1) to show his scars before the jury; and (2) to testify to events which occurred after he arrived at the hospital.

On direct examination Officer Pope testified that he observed a bullet hole in the appellant's side and administered first aid. On cross-examination defense counsel asked Officer Pope the location of the bullet holes. Officer Pope answered: "In my opinion the entry wound was on the left side, approximately two inches below the left nipple and two inches to the rear. There was also what appeared to be an exit [wound] on the right side." At this point defense counsel asked the appellant to stand and lift his shirt to show his wounds, because contrary to the officer's testimony, appellant contended that the bullet travelled downward and forward. He argued that this was proper cross-examination of the witness. The prosecutor objected on the grounds of relevancy and that any probative value would be outweighed by the prejudicial impact.

The only possible relevance of having appellant show his scars to establish the bullet path would be to corroborate appellant's testimony that appellant veered away from Officer Keeler when he was shot, and to attack the credibility of the officer. We find the trial court did not abuse its discretion when it sustained the state's objection.

The appellant relies on *State v. Edmonds*, 729 S.W.2d 588 (Mo.App.1987). In *Edmonds*, the prosecutor asked the court to order the defendants to place a wig on their heads which were seized from them at the time of their arrest. The victim was then asked to re-identify the defendants and each victim did so. The court held there was no error having the defendants put on the wigs. In *Edmonds*, there was an identification question at issue necessitating the defendants to put on a wig which were used during the commission of the crime.

Here, the showing of appellant's scars would be highly prejudicial and would serve only to generate sympathy for the appellant. There is no dispute that the appellant was shot. Unlike the identification issue in *Edmonds*, in the instant case the exact location of the bullet wounds is irrelevant and immaterial. Appellant's point has no merit.

■ Appellant next contends that the trial court erred by refusing to allow appellant to testify to events which occurred after he arrived at the hospital. The transcript reads as follows:

DEFENSE COUNSEL: [MR. KNAPPENBERGER] What was the next thing you remember, being in the hospital?

APPELLANT: Parts of it.

DEFENSE COUNSEL: What hospital were you taken to?

APPELLANT: St. Joseph.

DEFENSE COUNSEL: How long did you stay in the hospital?

PROSECUTOR: I object. It's irrelevant.

THE COURT: Any comment, Mr. Knappenberger?

DEFENSE COUNSEL: I believe it is relevant and material, Judge, as to what happened.

THE COURT: Sustained.

DEFENSE COUNSEL: Were you transferred from St. Joseph to another hospital ...

PROSECUTOR: I object. It's irrelevant what happened to him after he went to the hospital. It doesn't go to any issue in this case.

DEFENSE COUNSEL: Judge, it's relevant and material to this case and the jury is entitled to hear it.

THE COURT: Sustained.

As best we can decipher, appellant argues that this testimony was relevant to impeach Officer Pope's account of the shooting. We find no merit to appellant's contention that the testimony of the events which occurred at the hospital could prove whether appellant attempted to veer away from Officer Keeler when he was shot. Appellant's point is denied.

 Appellant's final point is essentially a reprise, with some embellishments, of all his previous points. His final point reads as follows:

The trial court allowed the prosecutor to inject speculative, hearsay, opinion, and argumentative evidence into the trial over the repeated objections of the defendant. The court's rulings individually and as a whole allowed a mass of incompetent evidence and argument to be received by the jury. The trial court should have excluded such evidence, and its failure to do so resulted in an unfair trial to defendant's material detriment.

This argument is too general to raise any issue on appeal. Rule 84.04(d); *see e.g., Groh v. Shelton*, 428 S.W.2d 911, 915 [2] (Mo.App.1968). The requirements of Rule 84.04(d) are mandatory. *In re Marriage of Sowers*, 733 S.W.2d 19, 20 [1] (Mo.App. 1987). There are three components of a point relied on: (1) a concise statement of the challenged ruling of the trial court; (2) the rule of law which the court should have applied; and (3) the evidentiary basis upon which the asserted rule is applicable. *Thummel v. King*, 570 S.W.2d 679, 685–

686 [5] (Mo. banc 1978); *State v. Cameron*, 604 S.W.2d 653, 659 [20] (Mo.App.1980).

We are not required to formulate an argument to support appellant's bald contentions. We have reviewed the record, and find that the court's rulings were proper regarding the state's closing argument and questions of hearsay, as well as matters of competency of the witness. Appellant's final point is denied.

Appellant's conviction of resisting arrest, § 575.150 RSMo 1986 is reversed. Appellant's conviction of third degree assault, § 565.070 RSMo 1986 is affirmed.

KAROHL, P.J., and SMITH, J., concur.