**STATE of Missouri,
Plaintiff–Respondent,**

v.

**William R. LONG, Defendant–Appellant.**

No. 16895.

Missouri Court of Appeals,
Southern District,
Division Two.

Jan. 29, 1991.

George A. Shaffer, Buffalo, for defendant-appellant.

Wayne K. Rieschel, Buffalo, for plaintiff-respondent.

SHRUM, Judge.

The defendant William R. Long appeals his conviction, in a court-tried case, of the class A misdemeanor of resisting arrest. The state charged in its information that a highway patrolman was making an arrest of the defendant for failure to register a motor vehicle annually, and the defendant, knowing that the officer was making an arrest, resisted arrest by fleeing. We are asked to decide two questions: Whether there was a fatal variance between the state's charge and the evidence adduced at trial and whether the state failed to prove an essential element of the offense. Be-

cause we answer the second question in the affirmative, it is not necessary to decide the first one. The conviction of the defendant is reversed and we order that he be discharged.

## FACTS

At trial, Missouri State Highway Patrol Trooper James Portman testified he was driving west on Highway DD in Dallas County about one-half mile west of the intersection of Highway DD with county road DD70 when he saw the defendant's east-bound white-over-maroon 1959 Ford pickup truck with an expired license plate. Portman did not know the defendant. He said he could not, based on his initial sighting of him, pick him out of a line-up.

Portman turned his patrol car around to follow and stop the defendant's truck. When he noticed the pickup truck was accelerating, Portman turned on his red lights at which time he estimated the pickup to be 200 yards west of county road DD70. The pickup truck turned south at a faster than normal speed onto gravel-surfaced DD70, and Portman pursued it down county road DD70. Shortly after turning onto DD70, Portman activated the siren on his vehicle. The trooper estimated the pickup truck's speed on DD70 at 60 to 65 MPH. Because Portman was accelerating, he was unable to "pace" the pickup to determine its exact speed.

The defendant pulled into a driveway at the Hoogland farm, his place of employment, 1.2 miles south of Highway DD. The defendant was getting out of his truck as the officer arrived. The officer asked the defendant "what his problem was." Over the defendant's objection, Portman testified the defendant replied he did not have a driver's license. Portman testified that within five minutes after the stop, he arrested the defendant on three charges: "Driving without a valid driver's license, driving with an expired license plate [1] and

1. It is unclear from the record whether the defendant was charged with failure to register a motor vehicle annually (§ 301.020, RSMo 1986), operating a motor vehicle without displaying a

set of license plates (§ 301.130.7), or failing to affix the annual tabs on his license plates (§ 301.130.8). The state, in its brief, advises us that "the legal charge of failure to register a

resisting arrest by fleeing in a motor vehicle." Portman testified the defendant did not resist after he advised him he was under arrest. After transporting the defendant to the county jail, Portman read him the *Miranda* warning. The defendant then told the officer, "he just wanted to get the vehicle home." Portman testified that while at the jail, he overheard the defendant telling his sister that "when he saw [the] lights come on ... he turned on the gravel road and headed for home."

Portman was questioned extensively about when he formed an intent to arrest the defendant. At the time he first saw the pickup and turned his patrol car around, Portman said it was his intention "to stop the pickup and investigate the apparent violation of failing to register the motor vehicle annually." Asked when he made the decision "to actually place this particular subject under arrest as opposed to what might be a normal detention in a routine traffic stop," Portman responded, "when I determined he was actively fleeing from me." Portman said his location at that time was on county road DD70, about one-quarter mile south of DD. On redirect examination, Portman said he distinguished between motorists who pull over and those who try to get away from him when deciding whether to make an arrest. "I arrest people who flee from me," he testified.

At the end of the state's case, the defendant moved for a judgment of acquittal contending the state did not prove the defendant knew Portman was making an arrest and the state did not prove Portman intended to make an arrest when he began his pursuit of the defendant. The court took the motion under advisement and later overruled it.

## SCOPE OF REVIEW

In his point on appeal which we consider dispositive, the defendant challenges the sufficiency of the state's evidence. In a court-tried criminal case, the findings of

the court shall have the force and effect of the verdict of a jury. Rule 27.01(b). Accordingly, appellate review of this case is as though a verdict of guilty was returned by a jury, and if there is substantial evidence to support the findings of the trial court, its judgment is to be affirmed. *State v. Giffin*, 640 S.W.2d 128, 130 (Mo. 1982); *State v. Edsall*, 781 S.W.2d 561, 563 (Mo.App.1989). In determining the sufficiency of the evidence, this court accepts as true all evidence tending to prove the defendant's guilt, together with inferences favorable to the state that can be reasonably drawn therefrom, and disregards all contrary evidence and inferences. *Giffin*, 640 S.W.2d at 130; *Edsall*, 781 S.W.2d at 563.

## ANALYSIS AND DECISION

The defendant alleges in this point on appeal that the trial court erred because the state failed to prove all the elements of § 575.150, RSMo 1986. The defendant's argument is two-fold: the state failed to prove Trooper Portman intended to arrest him prior to flight and did not present evidence that the defendant knew Portman was making an arrest.

■ We find that the first argument advanced by the defendant is sound. Section 575.150, RSMo 1986, reads in pertinent part:

"1. A person commits the crime of resisting ... arrest if, knowing that a law enforcement officer is making an arrest, for the purpose of preventing the officer from effecting the arrest, he:

(1) Resists the arrest of himself by ... fleeing from such officer...."

It is clear from the language of the statute that the General Assembly of Missouri intended to prohibit flight as one of several means of resisting arrest. The gravamen of the offense is resisting an arrest, not flight from a law enforcement officer.[2] It

---

motor vehicle annually is commonly referred to as driving with an expired license plate."

**2.** *See Jackson v. State*, 718 S.W.2d 724 (Tex. Crim.App.1986) (en banc), in which the court

examined Tex.Penal Code Ann. § 38.04(a) which provides: "A person commits an offense if he intentionally flees from a person he knows is a peace officer attempting to arrest him." The Texas court, in discussing what must be

is also clear from case law construing § 575.150, that the offense of resisting arrest cannot occur unless a law enforcement officer actually contemplates an arrest. *State v. Wanner*, 751 S.W.2d 789, 791 (Mo. App.1988).

In *Wanner*, two officers separately pursued defendant who was riding a motorcycle. At various points in the pursuit, one officer activated his red lights and spotlight, pursued defendant at a speed averaging 80 MPH, and set a road block at which he attempted to flag down defendant by waving his hand and yelling "stop, police." The officer shot defendant when he drove his motorcycle past the police car passing within six inches of the officer. *Id.* at 790.

At trial the officer testified that throughout the incident it was not his intention to arrest the appellant; he wanted only to warn him. In reversing the conviction, the court said:

"The officer testified that he *initially sought to stop appellant only to warn him about his driving habits.* When Officer Keeler first observed the appellant, he never intended to effectuate an arrest. Therefore, appellant could not have resisted an arrest when he fled from the officer."

*Id.* at 791 (emphasis in original).

■ The state admits in its brief that "[a]t the time Trooper Portman first saw the violation by Defendant of the failure to register vehicle annually, he apparently had not developed the intent to arrest Appellant." This admission conforms to the evidence. Referring to the time when he first turned his patrol car around and commenced pursuit, Portman said it was his intention "to stop the pickup and investigate the apparent violation of failing to register the motor vehicle annually."

The state argues that "[s]hortly thereafter upon observing the Defendant accelerate his vehicle and attempt to evade the Trooper, the Trooper developed the intent to arrest the Defendant *on all charges*" (emphasis added). This assertion is contrary to the evidence. The officer never testified that he intended to arrest the defendant for failure to register the vehicle annually; he simply testified he decided to arrest the defendant "[w]hen I determined he was actively fleeing from me." Moreover, Portman could not have formed, during the pursuit, an intent to arrest the defendant for failing to register. Section 301.020, RSMo 1986, requires the *owner* of a motor vehicle to register. From his testimony, it is clear Portman did not know the driver; therefore he would have to have stopped the pickup to determine ownership before he could charge the driver with violating § 301.020. Nor could Portman have intended to arrest the defendant on the driver's license charge at any time prior to the stop because he did not become aware that the defendant did not have a valid driver's license until after the stop. At trial, Portman was never asked for what offense he intended to arrest the defendant once he formed the intent to arrest. And at no point at trial did he testify he intended to arrest the defendant for driving with expired license plates.

In the case before us, the sequence of events, viewed in the light most favorable to the judgment, was (a) the officer commenced pursuit of the defendant without any intent to arrest him, (b) the defendant fled from the officer, and (c) the officer formed an intent to arrest the defendant when he "determined [the defendant] was actively fleeing from me." There was no evidence at trial identifying the crime for which he intended to arrest the defendant. While we are sympathetic with the view that such a sequence of events might constitute a crime,[3] we are convinced that the

---

pled in the charging instrument under § 38.04(a), said: "The gravamen of the offense is the evasion of an arrest, not the evasion of a police officer." 718 S.W.2d at 726, quoting *Jackson v. State*, 690 S.W.2d 686, 688 (Tex.App. 1985).

**3.** The state legislature requires drivers to yield to an emergency vehicle which is operating its siren or red light. Section 304.022.1, RSMo 1986. Drivers are required to "stop and remain" until the emergency vehicle passes unless "otherwise directed by a police or traffic officer." *Id.* The definition of an "emergency vehicle" includes vehicles operated by the state highway patrol. Section 304.022.3(1).

state failed to prove that the defendant violated § 575.150. The statute creates the crime of resisting arrest by flight; it does not create the crime of fleeing from a traffic stop where no arrest was intended until after flight commenced.

While the decisions of other states are not controlling, they are persuasive when the facts are similar. *Cherry Manor v. American Health Care, Inc.*, 797 S.W.2d 817, 821 (Mo.App.1990). In *Smith v. State*, 739 S.W.2d 848 (Tex.Crim.App.1987) (en banc), the court was called upon to decide whether Tex. Penal Code Ann. § 38.04 (see footnote 2) was violated when an individual fled from an officer who was not attempting to arrest him but was only attempting to stop him for investigation purposes. The Texas court held that the statute, similar in language to § 575.150, RSMo 1986, was not violated under such circumstances because the offense "does not occur unless and until an individual flees from a peace officer who *at that moment in time* is attempting to arrest him." *Smith,* 739 S.W.2d at 850 (emphasis added). Thus, the Texas court reached the same result as that reached by the court in *Wanner* in similar fact situations involving comparable statutes.

Because of our view that *Wanner*, 751 S.W.2d 789, and the particular facts of this case require reversal, we need not address the defendant's contention that the state failed to prove he knew Trooper Portman was making an arrest. However, we caution that this opinion is not authority for the proposition that a person who uses a motor vehicle to flee a pursuing officer may never be convicted of violating § 575.150.[4]

The judgment is reversed and the defendant is ordered discharged.

HOGAN, J., concurs.

PARRISH, P.J., dissents in separate opinion.

PARRISH, Presiding Judge, dissenting.

I dissent. The principal opinion points out that, as pertinent to the facts of this case, the misdemeanor offense of resisting arrest includes two elements—that a law enforcement officer intended to arrest defendant, and the defendant, knowing that the officer intended to make an arrest, fled from the officer. § 575.150.1(1).[1] The opinion finds that there was no showing of an intent on the part of Trooper Portman to arrest the defendant because, at the time Trooper Portman began his pursuit of the defendant's car, the trooper only intended to stop the car to investigate an apparent violation of failing to register a motor vehicle. From that finding, the opinion concludes that the state did not prove that the trooper intended to arrest the defendant *prior to flight* and finds that "[§ 575.150] does not create the crime of fleeing from a traffic stop where no arrest was intended *until after flight commenced.*" (Emphasis added.)

I do not believe that it was necessary for Trooper Portman to have intended to arrest the defendant before the trooper began pursuit of the defendant's vehicle, i.e., prior to defendant's attempts to avoid apprehension. In my opinion, the testimony of Trooper Portman in which he stated that he developed the intent to arrest the defendant after determining that the defendant was fleeing from him was sufficient to establish the first element of the offense of resisting arrest. Defendant's flight was ongoing. I believe all that was necessary in order for the trooper to satisfy the first element of the offense was for the trooper to form an intent to arrest the defendant during the pursuit, but prior to defendant's arrest.

---

4. During the flight some crime might come to the attention of the pursuing officer and, in such a situation, the officer could form the intent to arrest during the flight. For example, the fleeing person might commit a crime in the presence of the arresting officer. Or the pursuing officer, aware of the identity of the person in flight, might learn through radio communica-

tion that there is an outstanding arrest warrant for him. These hypothetical examples stand in stark contrast to the case before us in which the officer testified he always arrests "people who flee from me."

1. References to statutes are to RSMo 1986.

The principal opinion relies on *State v. Wanner*, 751 S.W.2d 789 (Mo.App.1988), for the proposition that an officer in pursuit of a vehicle must contemplate an actual arrest in order for the offense of resisting arrest to occur. *Wanner* is distinguishable from this case. In *Wanner* there was never an intent to arrest the offender at any time prior to the offender being shot. In this case, during the course of the pursuit, before the defendant was apprehended, Trooper Portman developed the intent to arrest him.

The principal opinion does not reach the second element of the offense charged—that the offender, the defendant, knowing that the officer intended to make an arrest, fled from the officer. Mindful that, in determining the sufficiency of the evidence, an appellate court accepts as true all evidence tending to prove the defendant's guilt, together with inferences favorable to the state that can be drawn therefrom, I believe that the element that defendant knew the officer was going to arrest him can be inferred from defendant's conduct in attempting to avoid apprehension. Defendant's efforts to avoid apprehension, i.e., his fleeing during the entire time he was pursued by Trooper Portman, including the pursuit on county road DD70, were conscious efforts to avoid whatever apprehension was intended by Trooper Portman. After Trooper Portman developed the intent to arrest defendant, defendant continued fleeing from the trooper. Defendant's actions, as shown from the evidence at trial, were sufficient, in my opinion, to permit the inference that he knowingly intended to avoid arrest. The defendant had seen the lights that had been activated on the trooper's automobile; nevertheless, he continued to flee from the trooper at speeds of 60 to 65 miles per hour in disregard of the lights and in disregard of the siren that was activated after the trooper turned onto county road DD70. This conduct supports an inference that the defendant feared something more severe than a traffic ticket—that he fled from the patrol car for the purpose of preventing Trooper Portman from effecting his arrest. I would affirm the decision of the trial court.