STATE of Missouri, Respondent,

v.

Andrew Luke CHAMBERLIN, Appellant.

No. WD 47705.

Missouri Court of Appeals,
Western District.

March 22, 1994.

Bruce B. Brown, Brown & Brown, Kearney, for appellant.

Randall D. Thompson, Pros. Atty., Harrison County, Bethany, for respondent.

Before SMART, P.J., and LOWENSTEIN and FENNER, JJ.

SMART, Presiding Judge.

Andrew Luke Chamberlin appeals his misdemeanor convictions of: 1) minor in possession of intoxicating liquor, in violation of § 311.880;[1] 2) resisting arrest, in violation of § 575.150; and 3) failing to drive on the right side of a highway which had been divided into two roadways, in violation of § 304.015.3. Defendant was assessed a fine of $150.00 for the possession conviction, a fine of $250.00 and thirty days punishment on the resisting arrest conviction, a fine of $350.00 for the failure to drive on the right side of divided road. He was also fined $250.00 for a speeding conviction in the same case.

Judgment is affirmed in part and reversed in part.

On July 9, 1992, while standing outside in the parking lot of the fire department located in the City of Bethany, Trooper Kevin Fend-

1. All statutory references refer to the Revised Statutes of Missouri, 1986.

er heard a loud noise "like a vehicle accelerating and tires squealing" coming from the direction of the nearby highway. Trooper Fender drove his patrol car toward the area of the sound and observed two vehicles proceeding westerly on Highway 136. The front vehicle was straddling the center of the roadway with the left portion of the vehicle in the eastbound lane and the right portion of the vehicle in the westbound lane. It appeared as though the front vehicle was attempting to hinder the other vehicle from passing. The second vehicle was following in the westbound lane. As Trooper Fender approached the vehicles, the front vehicle began to accelerate. Leaving the second vehicle behind, Fender began pursuing the first vehicle, reaching speeds of approximately 120 miles per hour during the pursuit. Trooper Fender testified that the vehicle he was pursuing reached speeds of at least 100 miles per hour. After pursuing the vehicle at high rates of speed for approximately five miles, the front vehicle began emitting smoke and slowing down. Finally, the vehicle pulled onto the shoulder of the highway and stopped. The driver's side wheels were slightly on the pavement in the westbound lane of the highway. Fender stopped his patrol car within a few feet of the errant vehicle.

As Trooper Fender was in the process of exiting his vehicle, the driver's door of the other vehicle opened, and defendant exited the vehicle looking back toward the trooper. All of the patrol car's lights were illuminated. Trooper Fender recognized the occupant as Luke Chamberlin. After exiting the vehicle, defendant began running. Fender yelled at defendant to stop several times but defendant failed to comply. The other occupant of the vehicle exited the car from the passenger side and also began running. After other officers arrived on the scene, the officers began pursuit on foot. The officers were unable to locate the suspects. Cans of beer were found in the vehicle.

Later the same evening, Trooper Fender located defendant at a nearby residence and arrested him. Trooper Fender noted a "slight smell of intoxicants" about Chamberlin. At Defendant Chamberlin's trial, the jury returned guilty verdicts on all counts.

On April 5, 1993, the trial court denied defendant's motion for judgment of acquittal notwithstanding the verdict and entered judgment affirming the convictions. Defendant appeals from the trial court's judgment.

In the only brief filed in this appeal, defendant complains that the trial court erred as a matter of law and to the prejudice of defendant by denying his motions for judgment of acquittal as to the offenses of: 1) failure to drive on the right side of a divided road; 2) resisting arrest; and 3) minor in possession of intoxicating liquor. Defendant asserts that the evidence was not sufficient to permit a reasonable juror to find each and every element of each offense beyond a reasonable doubt.

### Failure to Drive on the Right Side of a Divided Roadway

First, defendant contends that the evidence was not sufficient to support a conviction for the offense of failure to drive on the right side of a divided road. Specifically, defendant claims that the State failed to prove defendant operated his motor vehicle upon a highway which had been divided into two roadways. When determining whether sufficient evidence was presented to support the jury's verdict, appellate courts view the evidence and all reasonable inferences in the light most favorable to the verdict, disregarding contrary evidence or inferences. *State v. Dulany*, 781 S.W.2d 52, 55 (Mo. banc 1989). Appellate review is limited to a determination of whether sufficient evidence has been presented for a reasonable juror to find defendant guilty beyond a reasonable doubt. *Id.*

In count III of the information, defendant was charged with "failing to drive on the right half of the road" in violation of § 304.015.3. This section provides that:

It is unlawful to drive any vehicle upon any highway or road which has been divided into two or more roadways by means of a physical barrier or by means of a dividing section or delineated by curbs, *lines or other markings on the roadway,* except to the right of such barrier or dividing section, or to make any left turn or semicircular or U-turn on any such

divided highway, except in a crossover or intersection.

(Emphasis added). The jury instruction submitted to the jury the following:

First, that on or about July 9, 1992, in the County of Harrison, State of Missouri, the defendant operated his motor vehicle upon a highway which had been divided into two roadways, and

Second, that the defendant failed to drive on the right side of the road.

Defendant asserts that the State had the burden to prove that U.S. Highway 136 was divided into two roadways and that the State failed to do so. The State, defendant suggests, proved only that the highway was a two-lane undivided roadway.

Trooper Fender testified that the highway had one eastbound lane and one westbound lane. A center line divided the lanes. He stated that defendant was driving partially in each lane and that the middle of his vehicle was directly over the center line. This testimony was offered to show that defendant was straddling the center line on a highway which was "divided into two or more roadways by means of ... lines or other markings on the roadway" in accordance with § 304.015.3. Defendant is correct, however, that the word "roadway" is not synonymous with the word "lane" in the statutory scheme. See, e.g., § 304.015.5 and § 304.016 (referring to the division of a roadway into lanes). Further, it appears that subdivision 2 of § 304.-015 was really designed to apply to conduct such as defendant's in this case:

2. Upon all public roads or highways of sufficient width a vehicle *shall be driven upon the right half of the roadway,* except as follows:

(1) When overtaking and passing another vehicle proceeding in the same direction under the rules governing such movement;

(2) When placing a vehicle in position for and when such vehicle is lawfully making a left turn in compliance with the provisions of § 304.014 to 304.026 or traffic regulations thereunder or of municipalities;

(3) When the right half of a roadway is closed to traffic while under construction or repair;

(4) Upon a roadway designated by local ordinance as a one-way street and marked or signed for one-way traffic.

(Emphasis added). Subdivision 3, on the other hand (the subsection which defendant was charged with violating) was apparently drafted with the end of making it unlawful to cross a median. There is no exemption in subdivision 3 for overtaking and passing a vehicle. Consequently, if subdivision 3 were violated by defendant's conduct, then any motorist passing another vehicle on a two lane roadway would be guilty of violating the statute. The ultimate guide in statutory construction is the intent of the legislature. *Edwards v. St. Louis County,* 429 S.W.2d 718, 722 (Mo. banc 1968). The court should not construe a statute in such a way as to work an unreasonable, oppressive, or absurd result. *Tribune Publ. Co. v. Curators of Univ. of Mo.,* 661 S.W.2d 575, 583 (Mo.App.1983). The only common sense understanding of the statute, in view of the entire statutory scheme, is that defendant should have been charged with violating subdivision 2 rather than subdivision 3. We hold subdivision 3 does not apply to his conduct in this case. We find merit in defendant's contention that he was not shown to be guilty of the offense with which he was charged, and which was submitted to the jury.

An argument could be made that the failure to charge defendant under the proper subsection is harmless due to the fact that defendant and everyone else knew his conduct was unlawful, the testimony as to his conduct was undisputed, and he would have been convicted anyway since the essence of the offense under either subsection was driving his vehicle toward the left side of the road. However, no such argument has been made, and we are reluctant to deal with any such issue without benefit of briefing. Consequently, we do not reach that issue. Based upon the facts and argument before us, defendant's conviction for violating § 304.015.3 must be reversed. Point I is granted.

### Resisting Arrest

Next, defendant asserts that the evidence was not sufficient to support a conviction for resisting arrest. Specifically, defendant argues that the State failed to prove by substantial evidence that defendant knew that a law enforcement officer was arresting him for failure to drive on the right half of the road and exceeding the 55 mile per hour speed limit.

In count II defendant was charged with resisting arrest in violation of § 575.150 when defendant "knowing that an officer was making an arrest and for the purpose of preventing the officer from effecting the arrest, resisted the arrest of himself by fleeing from the officer." Section 575.150 provides that:

> A person commits the crime of resisting or interfering with arrest if, knowing that a law enforcement officer is making an arrest, for the purpose of preventing the officer from effecting the arrest, he:
>
> (1) Resists the arrest of himself by using or threatening the use of violence or physical force or by fleeing from such officer. . . .

Defendant claims that the State failed to introduce substantial evidence that defendant knew that Trooper Fender was a law enforcement officer and was making an arrest of him for failure to drive on the right half of the road and exceeding the 55 mile per hour speed limit.

Section 575.150 requires that the State prove that defendant knew that a law enforcement officer was making an arrest, and that defendant resisted the arrest by fleeing for the purpose of preventing the officer from effecting the arrest. Defendant Chamberlin argues that there was no substantial evidence that Chamberlin knew that a law enforcement officer was attempting to arrest him. A case which seems to help Chamberlin in this assertion is *State v. Dossett*, 851 S.W.2d 750 (Mo.App.1993), where a police officer observed an automobile with its headlights on high beam. The officer twice flashed his lights at the driver so the driver would dim her lights, but she failed to respond. The officer turned his patrol car around and began pursuing the driver of the vehicle with his red and white lights activated. After pursuing the car several blocks, the officer turned on his siren. The car accelerated and went through a yellow light. When the officer went through the red light, his patrol car hit another car, fatally injuring one of the occupants of the car. The driver of the fleeing vehicle was charged with several offenses, including resisting arrest. The officer never testified that he intended to arrest the driver of the car during the chase. This court reversed the driver's conviction because there was no evidence presented showing that the officer intended to arrest the driver of the vehicle. The ruling followed precedent in two cases, *State v. Wanner*, 751 S.W.2d 789 (Mo.App.1988) and *State v. Long*, 802 S.W.2d 573 (Mo.App.1991). In *Wanner*, a police officer attempted to stop a motorcycle. The officer testified that he did not intend to arrest the operator of the motorcycle but intended to issue a warning. In *Long*, a police officer indicated he intended to stop a truck for investigative purposes because the truck appeared to have an expired registration. The court in *Long* stated that the gravamen of the offense is the actual resistance of an arrest, not mere flight from a police officer. In *Dossett*, this court stated:

> Because of the driver's lack of knowledge of the officer's intent, in cases such as this, it is impossible to satisfy the twin requirements of the statute that the person know that an officer is making an arrest, and that the officer is making an arrest.

In this case, Trooper Fender testified that when he saw defendant's vehicle cross the center line, he sought to stop him for a routine traffic violation. Defendant then began driving at a faster speed, eventually surpassing 100 miles per hour. Trooper Fender activated both his emergency lights and his siren during the pursuit. During a suspect's flight from a law enforcement officer, the actions of the suspect may constitute a separate crime, giving rise to a reason to arrest the suspect. *Long*, 802 S.W.2d at 577 n. 4. For instance, § 43.170 makes it a misdemeanor offense to fail or refuse to stop on the signal of any highway patrol officer in the proper discharge of his duties. In this

case, when defendant fled away at very dangerous and excessive speeds, Trooper Fender aggressively pursued him at high speeds with an obvious intention of apprehending him, with both his emergency lights and siren activated. Chamberlin continued to try to evade the officer. This case is distinguishable from *Dossett, Long,* and *Wanner,* in that the jury could reasonably infer that Chamberlin at some point, at least when he fled on foot if not before, knew that the officer no longer intended a "routine stop." When Trooper Fender exited his vehicle he had his weapon drawn, and he was clearly attempting to effectuate an arrest. The evidence does not establish that Chamberlin noticed the drawn weapon, but when the trooper yelled at him to stop, Chamberlin knew, it may reasonably be inferred, that the officer was attempting to arrest him. It is not necessary for the officer to specifically say, "you are under arrest," when the circumstances indicate the officer is attempting an arrest. Trooper Fender testified to the following:

A.  As Luke came out of the driver's side of the vehicle, like I say, he exited. He had to look at me to get out of the vehicle. And after he got around the driver's door—the edge of the driver's door, he turned back and headed in a westerly direction, the direction the vehicles were facing. As he was rounding the corner of the door in that general vicinity, as I said, I recognized him; and I yelled, "Luke, stop."

Q.  And then you've testified he proceeded to go west on foot?

A.  Yes.

Q.  Did you say anything else?

A.  Yes. I said, "Luke, stop." Then he did not appear to be stopping. I said, "Luke, don't move." And he again was heading west, and my last comment directly to Luke was, "Highway Patrol. Don't move."

Trooper Fender stated that he would have pursued defendant on foot, but he did not deem it wise to leave his patrol vehicle unattended under the circumstances. The officer's verbal commands and the invocation of his authority as a state trooper were an attempt to effect the arrest of the defendant. The evidence was sufficient to permit the jury to find that defendant knew the officer was attempting to arrest him. The trial court did not err in denying defendant's motion for acquittal. Point II is denied.

### Possession of Intoxicating Liquor

Finally, defendant claims that the evidence was not sufficient to support a conviction for the offense of minor in possession of intoxicating liquor. Defendant asserts that the State failed to prove by substantial evidence that defendant knowingly and intentionally possessed the proscribed substance or that defendant was under the age of twenty-one.

First, we examine defendant's complaint that the evidence was not sufficient to show that defendant was a minor at the time of the incident, finding this point to be dispositive of the issues related to this charge. Trooper Fender testified at trial, over defendant's objection, that defendant was born in November, 1971. The date of the offense was July 9, 1992. Thus, this testimony indicated that defendant was twenty at the time of his arrest. The source of the officer's knowledge regarding defendant's age was apparently based on prior contacts with the defendant and upon law enforcement records. The record does not reveal the nature and extent of the prior contacts. Defendant strenuously objected to Trooper Fender's testimony based on the competency of the officer to testify regarding information obtained from sources which were not shown to be legally reliable or admissible at the trial and which were not produced at trial for examination.

The law does not require that every witness have absolute and certain knowledge of every fact as to which the witness testifies. There is a degree of accommodation made to uncertainty where the witness has a reasonable measure of qualification to testify concerning the matter in question, either because of opportunity to observe or because of rational inferences from adequate data. 2 Wigmore, Evidence, §§ 659–660 (Chadbourn rev. 1979). It makes sense that a person may testify as to his own age, even though that person cannot personally remember the

events surrounding the birth. Also, a family member of a subject person may generally testify as to the age of that person. *E.g.,* *George v. State,* 61 Neb. 669, 85 N.W. 840 (1901). *See* 1 McCormick on Evidence § 10, at 40 (4th ed. 1992). Such allowances are based upon the assumption that, within the family, discussions concerning the birth date and age of the person are sincere, common, and of sufficient interest that there is a high probability of accuracy.

In this case, however, the testimony as to age of the defendant was that of an acquaintance. Trooper Fender was a particular kind of acquaintance, one who may have had reason to ascertain the precise birth date of the defendant in connection with previous arrests. We find no case directly on point, and none has been called to our attention, holding it is proper to receive oral testimony based on out-of-court records. We cannot tell from the testimony why the officer claimed such familiarity with the accused's birth date. Also, we do not know whether the officer was so familiar with the accused's birth date that, even if he had not reviewed police records in preparation for testifying in this case, he would have had a sufficient basis to testify concerning the accused's birth date. Nor were any records offered and admitted into evidence under any exception to the hearsay rule, such as certificates or documents qualifying under the "business record" exception. In many cases, the admission of such oral testimony as to age might be found within the discretion of the trial court. Here, however, the age was a major element of the offense charged. It was not an incidental item. Therefore, we hold that the testimony asserting that defendant was twenty years of age at the time of the incident was not competent. It might have been possible to overcome the presumption of lack of competency by showing the basis of the officer's knowledge. Since proper objection was made, it was the duty of the prosecution to demonstrate the competency of such testimony. It was not the duty of the defense to demonstrate the lack of competency. In this case, however, the prosecution made no showing of competency. In the face of the objection, it was an abuse of discretion to permit the testimony as to defendant's age in the circumstances of this case. There was no other testimony as to defendant's age. The conviction was not based on substantial evidence as to the defendant's age. Point III is granted. The conviction for violation of § 311.880 for minor in possession of intoxicating liquor is reversed.

### Conclusion

The judgment of conviction for being a minor in possession of intoxicating liquor, in violation of § 311.880, is reversed, and the defendant is discharged from the sentence for such offense. The judgment of conviction for resisting arrest, in violation of § 575.150, and the sentence thereon, are affirmed. The judgment of conviction for failing to drive on the right half of the roadway, in violation of § 304.015.3 is reversed, and the defendant is discharged from the sentence for such offense.

All concur.