

# Missouri Court of Appeals

## Southern District

### Division Two

STATE OF MISSOURI, )
      )
    Plaintiff-Respondent, )
      )
vs. ) No. SD34155
      )
JACKIE L. DICKERSON, ) **Filed: September 14, 2016**
      )
    Defendant-Appellant. )

APPEAL FROM THE CIRCUIT COURT OF CEDAR COUNTY

Honorable James R. Bickel, Circuit Judge

**<u>AFFIRMED</u>**

Jackie L. Dickerson ("Appellant") was charged by a felony information with the class B felony of assault in the first degree (Count I), the unclassified felony of armed criminal action (Count II), and the class D felony of resisting arrest (Count III). The jury acquitted Appellant of the first two counts, but it convicted him of the third. Appellant brings one point on appeal, that he should have been acquitted on Count III as well because a reasonable person would not or should not have known that he was being placed under arrest. Thus, Appellant frames the issue as to whether or not Appellant reasonably should have known he was being placed under arrest when Sheriff Huffman told Appellant that he was going to place Appellant's hands behind Appellant's back.

1

The State counters that a reasonable person should have known that he was under arrest when told that the officer wanted the detainee to put his hands behind his back. We decline to adopt either view but affirm the conviction because of the later events in the exchange between Appellant and the law enforcement officers.

In reviewing a challenge to the sufficiency of the evidence, this Court accepts as true all evidence and its inferences in a light most favorable to the verdict. *State v. Botts*, 151 S.W.3d 372, 375 (Mo.App. W.D. 2004). This Court disregards contrary inferences, "unless they are such a natural and logical extension of the evidence that a reasonable juror would be unable to disregard them." *State v. Grim*, 854 S.W.2d 403, 411 (Mo. banc 1993). This Court may not supply missing evidence, or give the State the benefit of unreasonable, speculative, or forced inferences. *State v. Whalen*, 49 S.W.3d 181, 184 (Mo. banc 2001) (internal quotations omitted). This same standard of review applies when this Court reviews a motion for a judgment of acquittal. *Botts*, 151 S.W.3d at 375. "[T]he relevant question is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Bateman*, 318 S.W.3d 681, 687 (Mo. banc 2010) (internal quotations and citations omitted).

Section 575.150 states, in pertinent part:[1]

> 1. A person commits the crime of resisting or interfering with arrest, detention, or stop if, knowing that a law enforcement officer is making an arrest, or attempting to lawfully detain or stop an individual or vehicle, or the person reasonably should know that a law enforcement officer is making an arrest or attempting to lawfully detain or lawfully stop an individual or vehicle, for the purpose of preventing the officer from effecting the arrest, stop or detention, the person:

---

[1] All references to statutes are to RSMo Cum. Supp. 2009, unless otherwise noted.

(1) Resists the arrest, stop or detention of such person by using or threatening the use of violence or physical force or by fleeing from such officer[.]

Although Appellant was acquitted of the underlying charges of assault and armed criminal action, the facts concerning those charges are necessary to add context to the resisting arrest charge. A runner, Kenneth Snider, testified that he was training to run a marathon. He had his wife drop him off at a church, and he was going to run twelve miles back into town. During his run, several dogs came onto the road, and they started barking and nipping at him, but eventually left him alone. A truck then pulled up behind him, followed him slowly, then "revs up a little bit and [the driver of the truck] pulls off to the side of the road at me." Mr. Snider jumped in the ditch, then circled the truck around the front "to assess the situation" and approached the driver's side window. The driver, who was later identified as Appellant, asked Mr. Snider who he was. Mr. Snider answered, "Kenney Snider", and then

> walked up to the truck and I kind of sat my hands on the window of his truck. The window was down and I said, "I am training for a marathon." And it was at that point that [Appellant], he hit me across the face with the back of his hand and punched me a few times and tried to start to get out of the truck.

Mr. Snider first held the door shut and that is when he noticed the rifle in Appellant's truck. Mr. Snider then put his hands up and backed away as Appellant exited the truck and proceeded to first point the gun at Mr. Snider and then at the ground, and told Mr. Snider to "run." Appellant then fired a rifle at Mr. Snider ten to fifteen times. A friend who came to pick up Mr. Snider recognized the truck as belonging to Appellant and called law enforcement. An officer with the Dade County Sheriff's Department traveled

3

with Mr. Snider and found one live bullet and four spent rounds of ammunition at the spot where Mr. Snider said the altercation took place.

Sheriff Max Huffman of the Dade County Sheriff's Office testified that he first contacted Appellant at home by phone, convinced Appellant to come outside to meet with him, and then drove to Appellant's home and, at some point, was joined by Sergeant Gregg, Trooper Raulson, and Agent West from the Missouri Department of Conservation. They spoke to each other in Appellant's front yard by the mailbox. According to Sheriff Huffman, this was a consensual encounter. Sheriff Huffman recorded their conversation, and it was admitted into evidence as Exhibit 28. It was also transcribed by the court reporter and included in Appellant's transcript.

On the recording, Sheriff Huffman asked Appellant if he had a gun and Appellant said that he did not. Sheriff Huffman asked him what had happened that day, and Appellant stated, "[n]othing that I know of." The two men walked over to Appellant's porch swing. Sheriff Huffman asked Appellant about the man who was running on the road; Appellant stated, "[m]y dog took after him and run him down the road. I don't know if he is a thief or what the f*** he is. I've had trouble with thieves." Sheriff Huffman acknowledged that "[a] lot of people have" had trouble with thieves.

Appellant then yelled at Sergeant Gregg because Sergeant Gregg was allegedly looking into his truck. Appellant told Sheriff Huffman to "[g]et out of my yard," and Sheriff Huffman told him, "[w]e are just here to talk." Sheriff Huffman continued to ask Appellant about the runner and Appellant stated that he did not know if the runner was in his yard or not. Sheriff Huffman told him, "[w]hat I am trying to do is figure out what really happened." Sheriff Huffman asked Appellant, "[Y]ou didn't take any shots at

4

him?" Appellant said, "I ain't shooting at nobody. If I shoot at anybody, I will probably hit them. . . . If I catch him on my property, I will shoot him." Sheriff Huffman then asked Appellant, "You haven't had a confrontation just up the road here a little bit?" Appellant responded in the negative. Sheriff Huffman stated, "[w]ell, I just want to talk to you, try to find out what happened." Sheriff Huffman told Appellant, "I want to get to hear your side of the story."

Sheriff Huffman asked Appellant, "do you want to go for a ride with us?" Appellant responded, "I ain't going for a ride with nobody." Sheriff Huffman asked the other officers if they had any ideas. One of the officers said, "We can do it one of two ways." Appellant turned and started to walk back to his house. The following exchange then occurred:

> Sheriff Huffman:     Okay, well, I am going to put your hands behind your back.
>
> [Appellant]:    No, you are not!
>
> Sheriff Huffman:     Come on! (scuffling sounds) Don't do it. Don't do it. He will hit you again. I want you to roll over and put your hands behind your back. Roll over. Roll over. Roll over. Put your hands behind your back. Roll over. Put your hands behind your back.
>
> [Appellant]:   I ain't done nothing to nobody[.]   (scuffling sounds, moaning)
>
> Sheriff Huffman:     Bring your hands behind your back. Quit resisting. Give us your hands.
>
> [Appellant]:    I ain't bothering him.
>
> Sheriff Huffman:     Stop resisting. Put your hands behind your back. You got one? Yeah.
>
> [Appellant]:    F***ing grab me. Don't grab me.
>
> Sheriff Huffman:     Put your hand behind your back now.

5

[Appellant]: (Yelling.) Get him, boy! Get 'um!

Sergeant Gregg: You got it?

Sheriff Huffman: Yeah, I got it.

[Appellant]: Okay, guys, you have got me, but you done me wrong.

Sheriff Huffman: Are you done cussing me?

There is no dispute about whether Sheriff Huffman ever told Appellant that he was under arrest, he did not. Sheriff Huffman testified that he did not have time to do so because Appellant "was moving toward the house at a pretty fast clip." It is well-settled in Missouri law that an officer does not actually have to say "you are under arrest" to effect an arrest. *State v. Chamberlin,* 872 S.W.2d 615, 619 (Mo.App. W.D. 1994).

> The gravamen of the offense is resisting an arrest, not flight from an officer. Accordingly, the offense of resisting arrest cannot occur unless a law enforcement officer actually contemplates an arrest. Resistance to an arrest must occur when the person knows that an officer is making an arrest. The arrest must be in progress when the "resistance" occurs. An arrest is in progress once the officer is attempting to actually restrain or control the person of the defendant.

*State v. St. George*, 215 S.W.3d 341, 345-46 (Mo.App. S.D. 2007) (internal quotations and citations omitted).

In this case, Appellant and any other reasonable person may not have known that an arrest was imminent when initially told that the officers were just there to talk or that the officers just wanted to hear Appellant's side of the story. Appellant acknowledged that he had some sort of contact with Mr. Snider even though he denied shooting at him. The questioning was extensive and the officers kept pressing Appellant as if they did not quite believe his side of the story. The officers indicated that Appellant could talk with them or take a ride with them. Appellant chose to walk away from the conversation.

6

Appellant may not have known nor should he have known that he was under arrest even when the officer said he wanted Appellant to put his arms behind his back. It may have been a pure safety measure for the officers to request that a witness or a citizen keep their hands in view. Under calmer circumstances, Appellant may have thought he was free to go or asked if he was under arrest. Once it was clear that the conversations had come to an end and three officers got into a physical confrontation with Appellant, however, Appellant was under arrest and had to know he was under arrest. It is clear from the recorded events that Appellant resisted at every step of the remaining confrontation where it had to be clear that he was under arrest. He tried to get his dog to attack the officers. Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found that Appellant knew the officer was making an arrest as the officer was attempting to actually restrain or control Appellant. The judgment is affirmed.

Nancy Steffen Rahmeyer, J. - Opinion Author

Gary W. Lynch, P.J. - Concurs

Daniel E. Scott, J. - Concurs