**James D. POGUE, Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. WD 39488.**

Missouri Court of Appeals,
Western District.

March 22, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 3, 1988.

Application to Transfer Denied
June 14, 1988.

Fred Duchardt, Public Defender, Liberty, for appellant.

William L. Webster, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before KENNEDY, C.J., and
NUGENT and BERREY, JJ.

PER CURIAM:

James D. Pogue filed a Rule 27.26 motion following his conviction of burglary in the first degree and his sentencing of 30 years' imprisonment as a persistent offender. Pogue's conviction and sentence were affirmed on direct appeal by a per curiam order and an unpublished memorandum opinion. *State v. Pogue,* 690 S.W.2d 819 (Mo.App.1985). Pogue now appeals the denial, after an evidentiary hearing, of his Rule 27.26 motion, claiming ineffective assistance of counsel.

The order of the circuit court denying appellant's Rule 27.26 motion is affirmed.

Appellant was tried and convicted of burglary in the first degree, in violation of Sec. 569.160, RSMo 1978, and was sentenced to 30 years' imprisonment as a "persistent offender" under Sec. 558.016, RSMo Supp. 1984. The State's principal witness was the victim of the burglary, who was a resident of the top floor of a Kansas City

apartment building. The victim testified that she was awakened at around 3:00 a.m. by someone knocking at her door. When she ignored the knocking, she heard the noise of one or more persons on the roof of the building, and then the sound of someone breaking into her apartment through a balcony door.

At this point, testified the victim, she ran out of her apartment and knocked at the door of an apartment down the hall. The victim testified that, as she knocked on her neighbor's door, she saw appellant come out of her apartment. When she saw appellant, she screamed, and the appellant ran out the fire escape door. Appellant was apprehended by police a short time later in the parking lot of the apartment complex.

Appellant, on the other hand, testified that he was not coming out of the victim's apartment, but out of the apartment across the hall when appellant was knocking on her neighbor's door. According to appellant, he ran from the scene because he was on probation and did not want to be in any way involved in the incident.

Also arrested at the scene was Steven Daniels, an acquaintance of appellant who was staying in an apartment across the hall from the victim's apartment. It was Daniels' apartment that appellant claimed that he stepped out of when he saw victim in the hallway. At the trial, appellant testified that it was Daniels who committed the burglary, and that appellant knew nothing of the burglary at the time.

Police Detective Donald Mansell appeared at the trial and testified as to statements made by appellant and Daniels while they were in police custody. According to Mansell, Daniels initially told police that appellant "was the one in the apartment." Appellant, on the other hand, initially told police that he knew nothing about the burglary of the apartment. Then, according to Mansell, the two men conversed alone together for a few minutes, after which they told Mansell that they wanted to tell him "the truth of what really happened." Then, both Daniels and appellant told Mansell that it had been Daniels who had entered the victim's apartment. In addition, appellant now told Mansell that he knew the burglary was going to occur, and that he intended to assist Daniels in disposing of the stolen property.

Following the testimony, appellant was convicted of burglary in the first degree, and this conviction was followed by appellant's filing of a 27.26 motion. In his motion, appellant claimed that his trial attorney had been ineffective in several respects, including a failure to call Daniels as a witness at appellant's trial.

At the Rule 27.26 hearing, appellant testified that prior to trial he had told his trial attorney that he wanted Daniels subpoenaed to testify on his behalf. Appellant claimed that he continued to request Daniels' testimony even on the day of the trial, but that his attorney refused to subpoena or call Daniels as a witness.

Appellant's trial attorney, James Brown, also testified at the hearing. Brown recalls discussing the issue of Daniels' possible testimony with appellant, but Brown did not recall that appellant demanded or insisted on Daniels' appearing at the trial. Brown also testified that his decision not to call Daniels as a witness was a matter of trial strategy.

At the conclusion of the hearing, appellant's Rule 27.26 motion was overruled by the court. Appellant now argues that the trial court erred in overruling his Rule 27.26 motion because, in the underlying criminal proceeding, he was denied effective assistance of counsel.

In support of his claim, appellant argues that Brown was ineffective because he failed to produce or even interview Daniels as a trial witness on appellant's behalf. Daniels had appeared at appellant's Rule 27.26 hearing and had testified that, if Brown had requested his presence at trial, he would have appeared and testified on behalf of appellant. Daniels also testified that he was the one who entered the victim's apartment, and that appellant knew nothing about it at the time. Daniels further testified that, at his own guilty plea proceeding, he had told the judge that ap-

pellant was in no way involved with the burglary.

Daniels also stated that he was drunk when he made his first statement to the police, implicating appellant. He claimed that he made the first statement because the police told him they would let him go if he implicated appellant. According to Daniels, he then made a second statement to Detective Mansell, indicating that appellant was not involved in the burglary. Daniels said he made this second statement "because there wasn't no use in putting Jimmy into something he didn't do."

Daniels also claimed that Brown never contacted him to ask him about his potential testimony. Daniels' remark was corroborated by Brown himself, who conceded at the Rule 27.26 hearing that he had never spoken to Daniels.

Appellant now argues that, given these facts, the instant case is controlled by *Poole v. State*, 671 S.W.2d 787, 788 (Mo.App. 1983), and *Thomas v. State*, 516 S.W.2d 761, 766–767 (Mo.App.1974). These cases hold that when a criminal defendant informs his attorney of witnesses who may offer exculpatory testimony, and that attorney fails to even investigate the matter by contacting said witnesses about the testimony, said inaction can amount to ineffective assistance of counsel.

In response to appellant's argument, the State claims that the attorney's refusal to produce Daniels as a witness was a matter of trial strategy and was thereby effectively immune to appellate review. As noted in the cases cited by the State, the choice of witnesses is a matter of trial strategy and will not support a claim of ineffective assistance of counsel. *Jackson v. State*, 729 S.W.2d 253, 255 (Mo.App.1987); *Fletcher v. State*, 710 S.W.2d 928, 930 (Mo.App.1986).

In support of its argument that Brown's conduct was a matter of trial strategy, the State refers to testimony presented at the Rule 27.26 hearing. There Brown testified that he decided not to present Daniels because he was concerned that Daniels might be cross-examined, and that if that happened, "we wouldn't know what he was going to say." At the same hearing, appel-

lant testified that Brown refused to produce Daniels because of Daniels' prior record for convictions of misdemeanors.

Brown himself testified that, instead of producing Daniels himself, he negotiated an agreement with the assistant prosecutor trying the case, whereby the assistant prosecutor would allow the defense attorney to ask Detective Mansell about the statements which Daniels made while in custody. Brown concluded that, in this fashion, he could get Daniels' statements into the record without cross-examination of Daniels.

After considering the circumstances and affording counsel due deference, we conclude that the decision not to interview or produce Daniels was a matter of trial strategy and does not constitute ineffective assistance of counsel. In so holding, we are mindful of those Missouri cases cited by appellant, which hold that a failure to even investigate an exculpatory witness suggested by a defendant can constitute ineffective assistance of counsel. However, in the cases cited by appellant, the attorneys' failure to contact potential witnesses was the result of mere negligence or inactivity, and not the result of a professional judgment that the witnesses' testimony would be fruitless or even harmful.

The case under review, on the other hand, is closer in its facts to *Porter v. State*, 682 S.W.2d 16 (Mo.App.1984) and *Griffin v. State*, 748 S.W.2d 756 (Mo.App. 1988). In those cases, the defense attorney chose not to produce or even interview witnesses suggested by the defendant because the attorney already possessed information from which he could reasonably conclude that the potential witnesses' testimony would not aid his case. In both cases, the court rejected the defendant's subsequent claim of ineffective assistance of counsel.

Similarly, in the case at bar, Brown had read Daniels' earlier statement and decided against interviewing or producing Daniels because of his criminal record and the unpredictability of his testimony. Instead, Brown elected to get Daniels' statement

into the record through cross-examination of Detective Mansell. Under these circumstances, we are unable to hold that Brown's decision deprived appellant of effective assistance of counsel.

Appellant also argues that Brown was ineffective because, at trial, he failed to limit appellant's testimony when appellant was cross-examined by the prosecutor about his prior criminal convictions. As pointed out by appellant in his brief, such testimony may be used for impeachment purposes only. Section 491.050, RSMo 1986. Appellant claims that, because Brown did not make any effort to limit said testimony to proper impeachment purposes, the trial court was able to use the testimony in making its persistent offender findings against appellant.

■ However, appellant has failed to make a convincing argument that he was actually prejudiced by this course of action. Appellant has not persuasively demonstrated that, in the absence of appellant's testimony, the trial court would have been left without evidence of appellant's prior convictions to use in making any persistent offender findings.

■ Appellant also argues that Brown was ineffective because, at trial, he failed to object to impermissible statements made by the prosecutor during his closing argument. Appellant charges that the prosecutor made improper references to appellant's prior convictions and plea negotiations, and that Brown's failure to object to such argument entitles appellant to a new trial. However, assuming, *arguendo*, that the prosecutor's statements were improper, Brown's failure to object is merely a trial error not rising to constitutional proportions and is thus not cognizable in a Rule 27.26 hearing. *Joiner v. State*, 621 S.W.2d 336 (Mo.App.1981).

■ Alternatively, appellant argues that Brown was ineffective because it was his own remarks, made during his own closing argument, which "opened the door" for the prosecutor's improper statements made in rebuttal. However, appellant's claims involving improper closing arguments are not matters which afford a basis for relief on a Rule 27.26 motion. *Booth v. State*, 491 S.W.2d 286, 288 (Mo.1973); *Collins v. State*, 536 S.W.2d 928, 930 (Mo.App.1976).

Accordingly, the judgment of the trial court is affirmed.