**STATE of Missouri, Respondent,**

v.

**Romauldo SUAREZ, Appellant.**

**Romauldo SUAREZ, Appellant,**

v.

**STATE of Missouri, Respondent.**

**Nos. WD 45660, WD 47247.**

Missouri Court of Appeals, Western District.

Oct. 26, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 30, 1993.

Application to Transfer Denied Jan. 25, 1994.

Susan L. Hogan, Appellate Defender, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before ULRICH, P.J., and BERREY and SMART, JJ.

BERREY, Judge.

Appellant was convicted by a Jackson County jury of sale of a controlled substance and sentenced to five years imprisonment.

Appellant appeals his conviction and sentence and subsequent denial without an evi-

dentiary hearing of his 29.15 motion. Both appeals are consolidated herein.

Undercover officer Rog is attached to the Drug Enforcement Unit of the Kansas City, Missouri Police Department. His duties are "to target residences and persons known to sell narcotics, to investigate those activities and to make cases where it was necessary to make, which meant to make buys, to conduct surveillances, and etcetera."

On March 4, 1991, Rog went to 3620 Troost to meet a man named Ron, who in turn was to introduce Rog to a man named Bo.[1] Ron and Rog went to an apartment on the second floor and knocked on this door. A black female opened the door and Ron inquired of her if she had any "crack or knew of anyone that could give her any crack." Her efforts at locating the "crack" for Ron and Rog were fruitless. Ron then suggested they go elsewhere. They went to Rog's car and drove to 3410 Forest, about two blocks away. The car was driven by Officer Campo also undercover. Ron and Rog walked toward 3420 Forest and were approached by "Mr. Suarez." Suarez asked them what they wanted as they approached the residence and informed them it was his house. All three men entered the house and located inside were other males sitting and standing around drinking beer. A man who was seated in a chair conversed with Suarez and said "Esta bien" or "He's fine."

Suarez then inquired of Ron and Rog who would make the buy. Rog indicated he would, and Ron was told to sit down. Suarez then took Rog into a kitchen area and had him wait. Suarez disappeared behind a door or an appliance and returned in about five seconds with a small baggy. Suarez said "Its small, but there's fire in it." According to Rog this meant it "was good cocaine." After he made the buy, Rog and Ron left the premises and entered their car. Campo took Ron back to 3620 Troost and then Campo and Rog returned to their unit.

Rog field tested the buy, and it tested positive for cocaine. It was sealed and initialed by Rog and placed in the property room to be sent to the Regional Crime Lab

---

1. We cannot determine from the record if the    meeting with Bo took place.

for analysis. Rog identified State's Exhibit 2 as the crack cocaine he purchased, and it was received without objection. Subsequently on March 6, 1991, a search warrant was executed at 3410 Forest. Officer James Davenport testified that the search warrant was executed after Rog purchased narcotics at 3410 Forest just prior to the search.

Recovered in the raid was $330 cash, 21 baggies of crack cocaine and six marijuana cigarettes from Suarez. The money Rog used to purchase the "crack" on March 4, 1991, was not located.

Appellant alleges three points of error. 1) The trial court erred by allowing the state to screen its witness Rog from public view thereby denying appellant his right to a public trial 2) The trial court erred by submitting Instruction # 4, patterned after MAI–CR3d 302.04, the reasonable doubt instruction to the jury and 3) The motion court erred in denying appellant's rule 29.15 motion without granting an evidentiary hearing because his trial counsel was ineffective.

Under Point I, appellant alleges the trial court erred by permitting placement of screens between the rail and the spectators section of the court room. The jury, counsel table, and the rest of the court room remained open. The state advised that Officer Rog was still undercover and working in the same community and because of this they feared for his safety. The screen would block the view of the witness from the spectators only. The state sought this relief to "preserve his cover" and for "his own safety." The state noted this method was preferable to locking the court room doors and covering the court room windows. The trial court explained to the jury that "the screens will only block the court room audience's view of the testimony of Detective Rog, since he is still acting in an undercover capacity, and it is so that Detective Rog can maintain his cover and for his protection." The screens were removed immediately upon completion of Rog's testimony.

■ Following the removal of the screens, the trial judge stated:

THE COURT: I would like the record to show that the screens are now down.

They were only up for a period of time that the witness was there. And I don't believe anybody came into the courtroom during that period of time. But the courtroom was always open during the whole time, to the public, if they wanted to come in.

The criminal defendant is entitled as a matter of right to a public and speedy trial. *Davis v. Reynolds*, 890 F.2d 1105, 1109 (10th Cir.1989). The public trial is a benefit to defendants in that it ensures all participants will perform their respective duties in a responsible manner and it discourages perjury. Id. A trial may be closed under very limited circumstances and the closure must be tailored to serve the specific reason for its happening.

■ In the instant case the trial was not closed, it was open and public except that the spectators, if any, could not view Rog. It developed that there were no spectators in the courtroom during Rog's testimony. Appellant has recognized that the trial court is free to exercise wide discretion in controlling the courtroom. *State v. Letcher*, 772 S.W.2d 795, 800 (Mo.App.1989).

■ Screening the identity of Rog from the public was not an abuse of discretion. *United States v. Jones*, 965 F.2d 1507, 1513 (8th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 346, 121 L.Ed.2d 261 (1992). In *Jones* the government argued that the screen was necessary to protect the personal safety of the witness. The appellant therein contended the screen was not necessary because the witness had testified in court in the past. The court held:

... Considering the evidence of the risk to Tisinger's life in this case before the district court, we find no abuse of discretion in its conclusion to use a screen during Tisinger's testimony.

Both appellant and state cite *United States v. Lucas*, 932 F.2d 1210 (8th Cir.1991), as being supportive of their positions. In *Lucas*, the government permitted the witness to testify behind a screen. The witness was a black female narcotics undercover officer, one of a very small number of black female undercover officers in the Kansas City Police Depart-

ment. The use of a disguise by the witness or the use of a screen or the full closure of the court room was considered. The trial court concluded that a screen should be used to protect her identity. The spectators could hear but not see her and it would not interfere with defendants, the court or jury's ability to observe her as she testified.

There was evidence that veiled threats had been received by her superiors and various other attempts made to ascertain her identity. The court noted "considering the record before the District Court, we find no abuse of discretion in its conclusion that a screen should be used during Detective Bown's testimony." *Id.*

As noted herein the trial court record reflects the need for safety of the officer and security for the ongoing undercover investigation. Both legitimate reasons for the trial court's action in screening the witness. We find the trial court did not abuse its discretion by permitting the screening of this witness from public view during his testimony.

Appellant's Point I is denied.

Next, appellant alleges the trial court erred in submitting the reasonable doubt instruction, MAI–CR3d 302.04 to the jury. This issue has been addressed on many occasions by the appellate courts of this state and found wanting. We note that where there is a MAI–CR instruction applicable under the law and the notes on use, it must be given to the exclusion of any other instruction. *State v. Isa,* 850 S.W.2d 876, 902 (Mo. banc 1993).

MAI–CR3d 302.04 properly defines reasonable doubt and was required to be given. The trial court did not err in submitting MAI–CR3d 302.04.

Appellant's Point II is denied.

Under Point III, appellant alleges his trial counsel was ineffective because he did not object to evidence of an unrelated drug sale at 3410 Forest on March 6, 1991, the day the search warrant was executed.

Appellant claims the motion court erred in denying his 29.15 motion for post conviction relief without granting an evidentiary hearing.

In order to prevail on a claim of ineffective assistance of counsel, a movant must establish, by a preponderance of the evidence, that his attorney's performance was deficient, and that the deficient performance prejudiced the defense. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984). "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.,* 466 U.S. at 693, 104 S.Ct. at 2067, 80 L.Ed.2d at 697. The defendant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.,* 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698.

Counsel is presumed to have been competent and the defendant must overcome the presumption that counsel's challenged acts or omissions were sound strategy. *State v. Stepter,* 794 S.W.2d 649, 656 (Mo. banc 1990). Decisions concerning whether or when to make objections at trial are left to the judgment of counsel. *Lewis v. State,* 767 S.W.2d 49, 53 (Mo.App.1989); *Coleman v. State,* 621 S.W.2d 357, 360 (Mo.App.1981). Ineffective assistance of counsel is not to be determined by a "post-trial academic determination that counsel could have successfully objected to evidence in a given number of instances." *Lewis,* 767 S.W.2d at 53. The failure to object to objectionable evidence does not establish ineffective assistance of counsel unless the evidence resulted in a substantial deprivation of the accused's right to a fair trial. *Id.* Counsel's failure to object to particular evidence can constitute mere "trial error" not rising to constitutional proportions and thus not cognizable in a post-conviction motion. *Pogue v. State,* 750 S.W.2d 497, 500 (Mo.App.1988). An appellate court "will not permit motion counsel to convert unpreserved error into viable error by arguing incompetence." *Jones v. State,* 784 S.W.2d 789, 793 (Mo. banc 1990), *cert. denied,* 498 U.S. 881, 111 S.Ct. 215, 112 L.Ed.2d 175 (1990). The fact that a meritorious objection is not made does not demonstrate incompetence; rather, there must be a showing that counsel's overall performance fell short of established norms and that this

incompetence probably affected the result. *Id.* Otherwise, the "failure to object constitutes a procedural default, precluding appellate or collateral relief." *Id.*

Appellant asserts that his trial counsel, Marco Roldan, was ineffective for his failure to object to the introduction of evidence of a second unrelated drug sale at 3410 Forest on March 6, 1991. Appellant does not assert that his counsel's "overall performance" was below established norms or that this incompetence affected the result. Appellant only claims that trial counsel's error warrants "relief due to its prejudicial effect."

We believe that trial counsel's failure to object to the second drug sale was a strategic decision. Before trial, Mr. Roldan filed a motion in limine seeking to exclude evidence of the "confirmation buy". The court overruled the appellant's motion after deciding the evidence was relevant and admissible.

After the appellant's motion in limine was overruled, the assistant prosecutor, during his opening statement, informed the jury that the evidence would show that on March 4, 1991, an undercover police officer, Detective Matthew Rog, went to a house at 3410 Forest and purchased from appellant a baggie of crack cocaine for twenty dollars. He also told the jury a search warrant was obtained on March 6, 1991, for the residence at 3410 Forest, but prior to executing the warrant, Detective Rog made a "confirmation buy." The jury was told the purpose of the "confirmation buy" was to ensure that the wrong house was not searched by mistake, and to determine how many individuals were in the house, whether there were any weapons displayed, and whether it was safe to conduct the search. The assistant prosecutor also told the jury that Detective Rog was admitted into the house at 3410 Forest on March 6, 1991, that he was greeted by a different man, not the appellant, and that this individual sold Detective Rog "a $20 rock" of crack cocaine.

Mr. Roldan made no objection to this portion of the assistant prosecutor's opening statement, nor did he object when Officer James Davenport testified to the same facts on direct examination.

Whether to file a motion in limine is a matter of trial strategy left to counsel's determination. *State v. Neal,* 849 S.W.2d 250, 258 (Mo.App.1993). Counsel has the option of discontinuing a motion in limine. *Downs v. State,* 789 S.W.2d 193, 195–196 (Mo.App.1990). The decision to abandon a motion in limine is a matter of trial strategy. *Id.*

In this case, we believe Mr. Roldan abandoned his attempt to exclude the evidence of the "confirmation buy" and concentrated on making the jury aware that Jorges Valdez, not the appellant, was involved in the March 6, 1991 drug purchase. This strategy could have caused the jury to believe that it was Valdez, not the appellant, who was involved in the first sale. Such strategy cannot be labeled as ineffective. *Id.*

Appellant appears to argue that Mr. Roldan should have objected to the evidence because its admission violated the rule that prohibits the admission of evidence of other, unrelated crimes committed by the accused. However, evidence of the "confirmation buy" clearly established that appellant had not been involved in the second sale. The exclusion of evidence of other crimes does not apply if there is no proof connecting the defendant to the other, uncharged offenses. *State v. Silvers,* 735 S.W.2d 393, 397 (Mo. App.1987).

Such evidence still must have some relevance to justify its admission. *See State v. Richardson,* 515 S.W.2d 571, 573 (Mo. 1974). Evidence of the "confirmation buy" was relevant to corroborate Detective Rog's testimony that crack cocaine was being sold from 3410 Forest and to reduce the possibility that he might have misidentified the house he purchased the crack cocaine from on March 4th, 1991.

We find the evidence of the March 6, 1991, "confirmation buy" was relevant and did not involve evidence of another crime committed by the appellant. Mr. Roldan was not ineffective in abandoning his pretrial objections to this evidence.

Appellant's Point III is denied.

Judgments affirmed.

All concur.