**STATE of Missouri, Respondent,**

v.

**Jerry RADLEY, Appellant.**

**Jerry L. RADLEY, Movant,**

v.

**STATE of Missouri, Respondent.**

**Nos. WD 48100, WD 51049.**

Missouri Court of Appeals,
Western District.

July 18, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 29, 1995.

Joseph P. Teasdale, Kansas City, Elizabeth Unger Carlyle, Lee's Summit, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before ULRICH P.J. and LOWENSTEIN and ELLIS, JJ.

LOWENSTEIN, Judge.

This is an appeal from a conviction of one count each of forcible rape, forcible sodomy, robbery, kidnapping, and four counts of armed criminal action. Appellant raises seven points on appeal: 1) Sufficiency of the evidence to support the armed criminal action counts; 2) Error in excluding negative fingerprint evidence; 3) Error in the taking of a second blood sample and admission of the test result; 4) Error in admission of Appellant's statement; 5) Improper argument by the state; 6) Prejudice to the Appel-

lant when the complaining witness revealed his previous plea of guilty; and 7) Ineffective assistance of counsel.

The evidence favorable to the verdict is as follows. Susan Capehart, the victim, went to her bank ATM at 43rd and Westport Road in Kansas City on the afternoon of April 7, 1991. She was approached by a man who, after she refused to give him money, asked her for a ride to his car where he said he had run out of gas and left his children. She agreed and proceeded to drive him to where he said his car was located. Appellant reached into his pocket and put a knife at Capehart's side. He repeatedly threatened "to shove the knife right through" her, and instructed her to drive to a location at 43rd and Michigan. The victim had seen only the tip of the blade, enough to identify it as a knife, as Appellant's hand was covering the remainder of the weapon. He then took her keys and forced her to perform fellatio and raped her from the rear. He took Capehart's flute, an expensive musical instrument, and then walked her away from the car into a field where he threw away her keys.

The following morning Appellant pawned the flute using a Missouri identification card with his picture, name and address. Five days after the incident, Appellant was arrested in the same area where he met Capehart. The arresting officer first approached Appellant because he was asking people for money and attempting to get a ride from another woman. After a computer check revealed an outstanding warrant in connection to the sexual assault on Capehart, the officer arrested him. A pocket knife was found in his possession. Capehart identified Appellant from a photo lineup of six pictures.

The evening of his arrest, Appellant initially declined to give a statement. He later changed his mind and agreed to talk to an officer. The officer could smell alcohol on his breath and at times, Appellant became very loud and belligerent but the officer did not believe he was intoxicated as his speech was not slurred. The Appellant told the officer that he had sex with a white woman he met at the bank. He stated that she offered to have sex with him in exchange for drugs and that her flute was "on loan" to secure payment of the drugs.

Prior to trial, there was a blood sample taken from Appellant for comparison to the semen taken from the victim's underpants. The test results excluded Appellant. Because the State had hair samples that matched the Appellant and because he had admitted having sex with her, the State believed that an error in the test results had occurred. An order for a new blood test was issued. The second blood test was consistent with the Appellant's commission of the crime.

Affirmed.

## I.

■ On Appellant's first point, he contends that there was insufficient evidence to uphold the armed criminal action counts. He asserts because the victim could not identify the weapon with absolute certainty, there was insufficient evidence to show that the knife he used was a "dangerous instrument," as required under the armed criminal action statute. § 571.015, RSMo, 1994. A dangerous instrument is defined as "any instrument, article or substance, which, under the circumstances in which it is used, is readily capable of causing death or other serious physical injury." § 556.061(9), RSMo, 1994.

Appellant maintains that the knife taken from Appellant upon his arrest should not have been introduced for demonstrative purposes, and that although there was evidence that this knife could cause serious bodily harm, there was no evidence that this was the knife Appellant actually used. Capehart was only able to say that the knife "looks like" the one used in the attack. This argument is without merit. Capehart was not required to identify with absolute certainty that this was the knife actually used. The identity of a weapon does not have to be wholly unqualified in order to be admitted into evidence. *State v. Jones*, 679 S.W.2d 927, 929 (Mo.App.1984). There is no necessity that the knife be identified specifically as the weapon used. *Id.* The weight to be given the tentative identification of a weapon is for the jury to determine. *State v. Friend*, 822 S.W.2d 938, 944 (Mo.App.1991). The state here did not argue to the jury that this

*was* the knife used in the commission of the crime.

The evidence in this case was more than sufficient to allow the jury to determine that the knife used by the Appellant was a dangerous instrument in order to support the armed criminal action counts. The point is denied.

## II.

■ According to the testimony, before Appellant got into Capehart's car, he apparently touched the gas cap and commented that it was broken. When police were investigating the assault, they dusted the gas cap and passenger side for fingerprints. There were no identifiable fingerprints lifted from Capehart's car. Appellant contends that the trial court erred in rejecting his offer of proof and excluding what he called negative fingerprint evidence that was found on the gas cap and passenger side window of Capehart's car. The trial court expressly permitted defense counsel to dispense with calling the witness and allowed a narrative offer of proof. The following exchange took place:

THE COURT: Well, for the record the Court has discussed with counsel the matter of fingerprints, and there's a big difference between a fingerprint that's not the defendant's and a fingerprint of no value. My understanding is that the evidence had no value. Is that true?

PROSECUTION: I'm told by Detective Dykstra that there were no prints of value found ...

.   .   .   .   .

THE COURT: But the point is if they had a fingerprint, if they had a valid fingerprint and it was not the defendant's, that could be exculpatory, that would be admissible. My understanding is any fingerprint evidence that they had obtained had no value.

PROSECUTOR: That's what I've been told.

THE COURT: And as such it's not admissible, not relevant. They have no obligation to take fingerprints, and evidence regarding fingerprints of no value is irrelevant, and I wouldn't allow in. Okay?

DEFENSE: Okay.

The defense counsel agreed with the court's characterization of the fingerprint evidence and ended it's offer of proof. If there had been any further disagreement, Detective Dykstra should have been called for an offer of proof on the record or defense counsel should have questioned the officer when he was called as a witness during trial. Instead, it appears from the record that counsel agreed with the trial court's finding. The point is denied.

## III.

Third, Appellant assigns error to the admission of the results of the second blood test into evidence because the test should not have been allowed. Rule 25.06(B)(8) provides that "[u]pon motion by the [S]tate, and subject to constitutional limitations and any other safeguards deemed appropriate by the court, and upon a showing of good cause, the court may order the defendant to ... [s]ubmit to the taking of a sample of the defendant's blood ... which involve no unreasonable intrusion thereof."

The results of the first blood sample taken in this case excluded Appellant as the possible suspect. Because there was evidence of matching hair and because Appellant had already admitted having sex with Capehart, the state believed that an error in the results had occurred. The trial court granted the state's motion for another blood sample.

■ Whether or not the ordering of the second blood test was a violation of the Appellant's rights, is immaterial because the objection to its admission into evidence has been waived. The results of the second blood test were introduced by the Appellant, not by the state. A defendant cannot complain about matters that he himself brings into the case. *State v. Collier,* 892 S.W.2d 686, 691–692 (Mo.App.1994). By first introducing evidence of the blood test, Defendant waived any challenge to the admissibility of the evidence. *State v. Idlebird,* 896 S.W.2d 656 (Mo.App., 1995). The point is denied.

## IV.

▇ Next, Appellant contends that statements he made to police should not have been admitted because he was intoxicated and therefore, they were not knowing and voluntary. Whether or not this point has merit is irrelevant because it was not preserved. A pre-trial motion in limine was made to exclude evidence of the Appellants' statements. The motion was denied. Appellant did not object at trial when the statements were entered into evidence nor was the issue raised in the motion for a new trial. Appellant has failed to preserve this error for appeal. *State v. McCrary*, 621 S.W.2d 266 (Mo. banc 1981), *State v. Stimmel*, 800 S.W.2d 156, 158 (Mo.App.1990). A pre-trial motion in limine does not relieve a defendant of a duty to make a timely objection at trial. *Stimmel* at 158. The point is denied.

## V.

▇ Next, Appellant asserts the trial court erred in failing to grant a new trial for statements made in the state's closing argument. During closing argument the state made four statements that the Appellant claims were prejudicial. First, there was a reference to a gun being stuck in Capehart's ribs, when the only weapon used was a knife. It was also stated the ordeal lasted several hours, when in fact it was about 45 minutes. Third, there were comments made about how this country celebrates Mother's Day because we believe in protecting the women of our country. Appellant believes this inflamed the jury. Finally, in reference to the second blood test, the state said it was done to give the defendant the "benefit of the doubt." None of the statements were objected to. Appellant's failure to object is fatal. *State v. Kempker*, 824 S.W.2d 909, 911 (Mo. banc 1992).

▇ Even though no objection was made, Appellant asks that this court review the statements under the plain error doctrine. Rule 29.12(b). Plain error will seldom be found in unobjected to closing argument. *Kempker* at 911. A holding that would require the judge to interrupt counsel would present myriad problems. *Id.* "To be entitled to relief under the plain error rule, appellant must go beyond a mere showing of demonstrable prejudice to show manifest prejudice affecting his substantial rights." *State v. Parker*, 856 S.W.2d 331, 332 (Mo. banc.1993). "[A] conviction will be reversed for improper argument only if it is established that the comment of which appellant complains had a decisive effect on the jury's determination." *Id.* None of the aforementioned statements would have had a decisive effect on the jury's determination. The point is denied.

## VI.

▇ Appellant's sixth point concerns statements made by Capehart during her testimony that he claims were prejudicial.

DEFENSE: And since this alleged incident, how many times have you been in the presence of Mr. Radley?

CAPEHART: For an arraignment hearing, for another hearing last week and a sentencing that didn't happen.

Appellant had previously plead guilty to the charges. Then, at the sentencing hearing, to which Capehart made the reference above, he withdrew his plea. It is this statement that Appellant believes was prejudicial because it suggested to the jury that Appellant had been previously convicted of the offense. "Unless specific objections are made at trial when questions are asked and answers given, issues presented by that testimony are not preserved for appellate review." *State v. Williamson*, 836 S.W.2d 70, 72 (Mo.App. 1992). Trial judges are not expected to assist counsel in trying cases and trial judges should act *sua sponte* only in exceptional circumstances. *State v. L____ R____*, 896 S.W.2d 505 (Mo.App.1995).

Defense counsel asked the question and failed to request the a curative instruction when the unexpected response was given. This point has not been preserved.

## VII.

▇ For his final point on appeal, Appellant asserts that he was denied effective assistance of counsel. His 29.15 motion was denied by the trial judge and it is from this that he appeals. Appellate review of the

denial of a post conviction motion is limited to a determination of whether the findings of fact and conclusions of law are clearly erroneous. *State v. Lawson,* 876 S.W.2d 770, 778 (Mo.App.1994). In order to prevail on a claim of ineffective assistance of counsel, a movant must show (1) that his attorney failed to exercise the customary skill and diligence that a reasonably competent attorney would perform under similar circumstances, and (2) that he was thereby prejudiced. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984), *Lawson* at 778. "In proving prejudice, it is insufficient to show that trial counsel's errors had some conceivable effect on the outcome of the proceedings, but rather, there must be proof of a reasonable probability that the result would have been different but for the errors. *Lawson* at 779.

 Appellant cites several different instances where he believed his counsel to be ineffective. There were three witnesses that counsel did not call and Appellant claims that these witnesses should have been presented at trial. All three of the witnesses were to testify about the first blood test that was taken and that the blood was in fact drawn from Appellant. There was obviously a mistake in the result of the first blood test as Appellant admitted having sex with Capehart. None of these witnesses would have provided Appellant with a "viable defense." *State v. Carson,* 898 S.W.2d 555 (Mo.App. 1995).

Appellant also complains that counsel was ineffective because of the failure to object to three statements that constituted hearsay, in failing to object to the prosecutor's leading questions to several of the State's witnesses and in failing to object during trial to several issues raised in a pre-trial motion in limine. "Decisions concerning whether or when to make objections at trial are left to the judgement of counsel." *State v. Suarez,* 867 S.W.2d 583, 587 (Mo.App.1993). "Ineffective assistance of counsel is not to be determined by a post-trial academic determination that counsel could have successfully objected to evidence in a given number of instances." *Id.* "The failure to object to objectionable evidence does not establish ineffective assis-

tance of counsel unless the evidence resulted in a substantial deprivation of the accused right to a fair trial." *Id.* "Counsel's failure to object to particular evidence can constitute mere 'trial error' not arising to constitutional proportions and thus not cognizable in a post-conviction motion." *Id.* "An appellate court will not permit motion counsel to convert unpreserved error into viable error by arguing incompetence." *Id.* The point is denied.

Judgment affirmed.

All concur.