STATE of Missouri, Respondent,

v.

Raymond BROOKS, Appellant.

No. ED 84348.

Missouri Court of Appeals,
Eastern District,
Division Three.

March 29, 2005.

S. Kristina Starke, St. Louis, MO, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Lisa M. Kennedy, Jefferson City, MO, for respondent.

NANNETTE A. BAKER, Judge.

Raymond Brooks ("Defendant") appeals from a judgment of the Circuit Court of the City of St. Louis entered after a jury convicted him of burglary in the second degree, felony stealing over $500, and felony resisting arrest. He was acquitted of one count of possession of burglar's tools. On appeal, Defendant alleges that the trial court erred in: (1) denying Defendant's motion for judgment of acquittal as to burglary in the second degree because the evidence was insufficient to sustain the conviction; (2) denying Defendant's motion for judgment of acquittal as to felony stealing because the evidence was insufficient to sustain the conviction; and (3) denying Defendant's motion for judgment of acquittal as to felony resisting arrest because the evidence was insufficient to sustain the conviction. We affirm in part and reverse in part.

## Background

Around 4:00 a.m. on February 10, 2003, witnesses saw two men wearing hooded shirts enter a "Cigarettes for Less" store through a broken window. The men exited the store and threw boxes of cigarettes into a red pickup truck with a silver metal toolbox. The truck went east on Chippewa. The witnesses called 911, and Officer

Robert Farrow ("Officer Farrow") responded. As Officer Farrow traveled west on Chippewa toward the store, he saw a truck matching the description of the burglars' truck traveling east on Chippewa.

Officer Farrow made a U turn and, as he waited for a red light to change, he activated the lights on his patrol car. The truck drove through the red light when Officer Farrow activated his car's lights. He continued to follow the pickup truck and momentarily lost sight of it. He turned left onto Tedmar and found the truck he had been following abandoned on the front lawn of a residence. There were fresh footprints in the snow directly outside the truck. In the bed of the pickup Officer Farrow found a trash bag, cartons of cigarettes, one hundred and twenty-six lighters and a roofer's hammer mounted on a piece of pipe. In the cab he found a black jacket and a knit cap.

The police took Brian Mueller, a witness who saw the burglar's pickup truck outside the "Cigarettes for Less" store, to the abandoned truck Officer Farrow had pursued. Mr. Mueller said he was certain that the truck was the same one he had seen in the parking lot outside the store. Officer Farrow called in a canine officer to assist in searching for the occupants of the truck. Officer James Siebum ("Officer Siebum") and his police dog, Canine Officer Glis, ("Glis") responded. Officer Farrow stayed with the abandoned pickup during the entire incident.

Officer Siebum learned that there were footprints that suddenly stopped near vehicles parked in a driveway down the street. Glis pulled on his lead and tried to get under the vehicles. Officer Siebum announced twice that he was an officer and that he had a dog. He commanded Glis to "find him" and Glis went underneath a truck and pulled out Wilbert Hunter ("Hunter") who had been hiding under the

axle of the truck. It is unclear from the record whether Hunter was found under the truck used in the burglary or under a different truck.

Officer Siebum and Glis then went to the abandoned truck on Tedmar that had been driven by the burglars. Officer Siebum discovered footprints leading from the driver's side of the vehicle through several yards. Glis smelled the area around the driver's side door and driver's seat and followed the scent alongside the footprints. Glis followed the scent through yards and beyond some footprints. Officer Siebum and Glis then backtracked and saw that the footprints had veered to the right and stopped under a shed window that was missing the frame and glass. Glis put his paws on the window and started barking. Officer Siebum believed the other burglary suspect was inside the shed so he announced he was a canine officer and had a dog. He said that if the suspect did not come out he would release the dog. When there was no response, Officer Siebum released Glis and the dog jumped through the window. Glis apprehended Defendant by biting him on the hand until Officer Siebum came inside the shed and removed Glis.

Other officers responded to the "Cigarettes for Less" store where the owner told the police that boxes of cigarettes were missing. There was a trashcan near the store that had the plastic liner removed. Sixty cartons of cigarettes were returned to the owner intact. Some cartons were returned damaged and some were not returned at all because they had flown out of the back of the truck as it was driven away. According to the evidence at trial, the value of the cigarettes returned was $1,920.00 and the value of the lighters was $348.00.

At the close of the evidence and following arguments of counsel, the jury found

Defendant guilty of second degree burglary (Count I), stealing (Count II), and resisting arrest (Count III). The jury found Defendant not guilty of possessing burglar's tools (Count IV). On March 19, 2004, appellant was sentenced as a persistent offender to concurrent sentences of eight years for second degree burglary, eight years for stealing and seven years for resisting arrest. This appeal follows.

On appeal, Defendant contends that the trial court erred in denying Defendant's motion for judgment of acquittal as to Counts I, II and III and submitting Counts I, II and III to the jury because the evidence was insufficient to support a conviction of burglary in the second degree, stealing over $500 and felony resisting arrest. Defendant also asserts that the trial court erred in allowing certain remarks made by the prosecutor during final summation.

## Standard of Review for Sufficiency of Evidence

The standard for reviewing claims challenging the sufficiency of evidence is well-established. *State v. Clay,* 975 S.W.2d 121, 139 (Mo.1998). On review, the Court accepts as true all of the evidence favorable to the State, including all favorable inferences drawn from the evidence and disregards all evidence and inferences to the contrary. *Id.* In reviewing a challenge to the sufficiency of the evidence, appellate review is limited to a determination of whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt. *Id.* In considering whether the evidence is sufficient to support the verdict, this Court considers whether a reasonable juror could find each element of a crime beyond a reasonable doubt. *Id.* When reviewing for sufficiency of the evidence, circumstantial evidence is afforded the same weight as direct evidence. *State v. Hutchison,* 957 S.W.2d 757, 767 (Mo. banc 1997). If there actually is insufficient evidence to support a guilty verdict, then a directed verdict of acquittal is authorized. *State v. Holloway,* 992 S.W.2d 886, 889 (Mo.App. S.D.1999).

## Discussion

Count I: Burglary in the Second Degree

In his first point on appeal, Defendant contends that the trial court erred in denying Defendant's motion for judgment of acquittal at the close of the evidence and submitting the count to the jury because the State's evidence was insufficient to prove that Defendant committed the crime of burglary in the second degree. He maintains that there was no evidence that Defendant was ever inside the Cigarettes for Less store or that he conspired with Mr. Hunter to commit the charged crime. We find no error and affirm.

■ After reviewing all of the evidence presented at trial, this court has determined that there was sufficient evidence for a reasonable juror to find each element of the crime of burglary in the second degree. The evidence connecting the pick-up truck to the burglary was substantial. A witness to the burglary identified the truck as the truck used in the burglary. An officer pursued a truck matching the description and traveling in the same direction as the truck used in the burglary. The officer lost sight of the truck momentarily, but when he found the truck parked it contained cartons of cigarettes and lighters. There is sufficient evidence for a juror to conclude that the truck found on Tedmar by Officer Farrow was the same truck used in the burglary.

■ The jury was instructed on the responsibility Defendant would have for the

conduct of another under Section 562.041.[1] Under this statute, a person is responsible for the conduct of another if, either before or during the commission of an offense and with the purpose of promoting the commission of the offense, a person aids or agrees to aid or attempts to aid the other person in planning, committing or attempting to commit the offense. Thus, the State would have to prove that Defendant aided or agreed to aid Hunter in planning or committing the burglary. While evidence connecting Defendant to the truck was circumstantial, it is afforded the same weight as direct evidence. Defendant was found at the end of a trail of footprints leading from the driver's side of the truck used in the burglary. Therefore, it would be reasonable for the jury to infer that defendant was in the truck and was either directly involved or aided Hunter in committing the burglary.

■ The State also had to submit sufficient evidence for a reasonable juror to conclude that either the defendant or Hunter committed every element of the burglary offense. Section 569.170 says a person commits burglary in the second degree when he knowingly enters unlawfully or remains unlawfully in a building or inhabitable structure for the purpose of committing a crime. Evidence of each of these elements was presented by the State. The State presented evidence that Defendant or Hunter knowingly entered when he broke a window and entered the store. The State presented evidence that Defendant or Hunter entered the store unlawfully as the owner of the store testified they did not have permission to enter or be there. The State also presented evidence that cigarettes and lighters were stolen from the store. The jury was free to infer that Defendant or Hunter broke the window and entered the store for the purpose of stealing the cigarettes.

■ If a jury is convinced beyond a reasonable doubt, we need not disturb the result simply because the case depended wholly or mostly upon circumstantial proof, so long as the evidence meets the minimal appellate standard required by due process. *State v. Grim,* 854 S.W.2d 403, 406 (Mo. banc 1993). Here, the jury was convinced beyond a reasonable doubt, and evidence was presented on every element of the crime charged. Even though much of the evidence was circumstantial, circumstantial evidence is given the same weight as direct evidence and the jury is free to make reasonable inferences from the evidence presented. The fact that there were no eyewitness identifications, fingerprints, footprint identifications or security camera tapes was an argument presented to and rejected by the jury. Under Missouri law, appellate courts do not review what evidence was absent, but instead review the sufficiency of the evidence that was presented. *See Clay,* 975 S.W.2d 121. We find there was sufficient evidence of burglary in the second degree. This point is denied.

Count II: Stealing Over $500

■ As his second point on appeal, Defendant maintains that the trial court erred in denying his motion for acquittal and submitting to the jury on Count II because there was insufficient evidence to sustain a conviction of felony stealing over $500.00. For his second point, Defendant again argues that the circumstantial evidence was inadequate to support the inferences made by the jury. Defendant also maintains that the evidence was insufficient by arguing what evidence was not presented by the State. However, as stat-

---

1. All statutory references are to RSMo.2000 unless otherwise indicated.

ed above, this court reviews the sufficiency of the evidence presented. The cases cited by Defendant under this point are not persuasive.

In *State v. Watkins* the court found the evidence insufficient to sustain a conviction and reversed. 804 S.W.2d 859 (Mo.App. E.D.1991). However, *Watkins* is distinguishable from this case. In *Watkins* the defendant was charged with felony property damage, and an element of felony property damage is damage over $1,000.00. *Id.* at 860. The court in *Watkins* found that there was no evidence presented for the dollar amount of the property damage. *Id.* at 861. Thus, one element was entirely lacking evidence. However, that is not the case here. In this case, the State presented evidence, though some of it circumstantial, of every element of the crime charged.

For a defendant to be found guilty of stealing over $500.00 under Section 570.030,[2] the State must prove that defendant: 1) appropriated the property of another 2) valued at $500.00 or more, but less than $25,000.00 3) with the purpose to deprive him or her thereof 4) without his or her consent.

As we determined above, there was sufficient evidence for the jury to find that, even if Defendant did not enter the store himself, he was still responsible for the crime under Section 562.041. Similarly to Point I, Defendant does not point to any specific element for which the evidence was lacking. Upon examination, we find that there was sufficient evidence for a reasonable juror to find each element of the crime of stealing over $500.00.

The first element a juror would have to find is whether Defendant appropriated the property of another. Defendant was found at the end of a trail of footprints leading from the truck used in the burglary. The cigarettes stolen from the store were in the truck. A juror could reasonably infer that the Defendant or Hunter appropriated the cigarettes and the cigarettes were the property of the store owner. A juror could also find that the stolen goods were valued over $500.00, because there was testimony that the value of the cigarettes was $1,920.00 and that the value of the lighters was $348.00. Furthermore, since the goods were taken from the store at night during a break-in, it would be reasonable for a juror to conclude that Hunter and Defendant did not intend to return the cigarettes to the owner and their purpose was to deprive the owner of them. This court does not find evidence lacking for any element of the crime of stealing over $500.00 and accordingly, this point is denied.

### Count III: Resisting Arrest

On his third point on appeal, Defendant asserts that the trial court erred in overruling the judgment of acquittal and submitting Count III to the jury because there was insufficient evidence to uphold a conviction of felony resisting arrest. Section 575.150 [3] states:

A person commits the crime of resisting or interfering with arrest, detention, or stop if, knowing that a law enforcement officer is making an arrest, or attempting to lawfully detain or stop an individual or vehicle, or the person reasonably should know that a law enforcement officer is making an arrest or attempting to lawfully detain or lawfully stop an individual or vehicle, for the purpose of preventing the officer from effecting the arrest, stop or detention, the person:

(1) Resists the arrest, stop or detention of such person by using or threat-

---

2. RSMo.2002.

3. RSMo.2002.

ening the use of violence or physical force or by fleeing from such officer; or

(2) Interferes with the arrest, stop or detention of another person by using or threatening the use of violence, physical force or physical interference.

5. Resisting or interfering with an arrest for a felony is a class D felony. Resisting an arrest by fleeing in such a manner that the person fleeing creates a substantial risk of serious physical injury or death to any person is a class D felony; otherwise, resisting or interfering with an arrest, detention or stop is a class A misdemeanor.

Jury Instruction Nine stated:

As to Count III, if you find and believe from the evidence beyond a reasonable doubt:

First, that on February 10, 2003, in the City of St. Louis, State of Missouri, Robert Farrow was a law enforcement officer, and

Second, that Robert Farrow was making an arrest of the defendant for burglary in the second degree, and

Third, that defendant reasonably should have known that a law enforcement officer was making an arrest of the defendant and

Fourth, that for the purpose of preventing the law enforcement officer of making the arrest, the defendant resisted by fleeing from the officer, then you will find the defendant guilty under Count II of resisting arrest.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

■ Defendant maintains that the trial court erred in submitting this instruction to the jury because Defendant was charged with resisting arrest by fleeing, not by hiding, which is what defendant was doing in the shed. Defendant also maintains that the State presented no evidence establishing that it was Defendant who fled from Officer Farrow. Defendant urges us to reverse his conviction and discharge him from the sentence imposed. The State concedes that the trial court did err in entering a verdict on Count III for felony resisting arrest, stating that the evidence was only sufficient to show misdemeanor resisting. The State asks us to reverse the judgment for felony resisting and remand to the trial court with an order to enter a verdict for misdemeanor resisting arrest with a re-sentencing. We find that there is insufficient evidence in this case to support a guilty verdict for resisting arrest. The conviction for Count III is reversed.

■ As is stated above, this Court determines whether a reasonable juror could find each element of a crime beyond a reasonable doubt. *Clay,* 975 S.W.2d at 139. When considering the evidence, circumstantial evidence is afforded the same weight as direct evidence. *Hutchison,* 957 S.W.2d at 767. Only when there is insufficient evidence to support a guilty verdict is a directed verdict of acquittal is authorized. *Holloway,* 992 S.W.2d at 889.

■ In a case from the Western District, the resisting arrest statute did not apply to a motorist's flight from a traffic stop initiated by police officer turning on lights and siren in an attempt to stop an automobile. *State v. Dossett,* 851 S.W.2d 750, 752 (Mo.App. W.D.1993). The court held that there was insufficient evidence to uphold a conviction for resisting arrest. *Id.* The court in *Dossett* relies on *State v. Long,* which states that the gravamen of the offense is resisting an arrest, not flight

from an officer. 802 S.W.2d 573, 575–576. Accordingly, the offense of resisting arrest cannot occur unless a law enforcement officer actually contemplates an arrest. *Id.*

Before we begin our analysis, it should be made clear that Defendant was charged with resisting arrest by Officer Farrow, the officer who followed the suspect truck. He was not charged with resisting arrest by Officer Siebum, the officer who found him in the shed. Arguments made by the parties regarding Defendant's encounter with Officer Siebum are misplaced and are not material to whether Defendant resisted arrest by Officer Farrow. It follows that any facts pertaining to Defendant's encounter with Officer Siebum are immaterial to our review.

With this in mind, we review the jury instructions. The jurors were instructed to find Defendant guilty if they found that, on February 10th 2003, (a) that Robert Farrow was a law enforcement officer and that (b) he was making an arrest of the defendant for burglary in the second degree; (c) that Defendant reasonably should have known that a law enforcement officer was making an arrest of Defendant and (d) that, for the purpose of preventing the law enforcement officer from making the arrest, Defendant resisted by fleeing from the officer.

While evidence was presented that Robert Farrow was a law enforcement officer, there was no evidence presented indicating that Officer Farrow was making an arrest of the Defendant. Officer Farrow testified that when he saw the truck, he did a U turn and followed the truck going east on Chippewa. He then testified that, at the intersection of Chippewa and Hampton, he turned on his emergency lights, but he did not turn on the siren. Officer Farrow continued to follow the truck at a slow speed because the streets were snowy. When the truck turned on Tedmar, Officer

Farrow testified that he was about three blocks behind the truck traveling at around 25 miles per hour. He turned onto Tedmar, where he found the truck parked on a lawn, empty of occupants. This was the extent of the testimony about Officer Farrow following the pickup truck. He never testified about his intent when he turned on his emergency lights and he did not discuss whether he planned to arrest the occupants of the truck.

Accordingly, it would be impossible for a jury to find that Officer Farrow was making an arrest of the occupants of the truck. While it may be possible to infer from the facts that Officer Farrow was making an investigatory stop, the facts that Officer Farrow did not turn on his siren and did not follow closely behind the suspect truck are significant. Though the State never elicited any such testimony, it proposes in its brief that Officer Farrow did not intend to arrest the occupants of the truck, but to make an investigatory stop. From this we determine that a reasonable juror could not have found that Officer Farrow intended to arrest Defendant.

A jury could not infer from the evidence presented that Defendant reasonably should have known that Officer Farrow was making an arrest. In *State v. Chamberlin*, the court found that there was sufficient evidence for the jury to infer that the defendant should have known the trooper pursuing him was making an arrest, but the facts in that case are distinguishable from the facts at issue here. *See* 872 S.W.2d 615 (Mo.App. W.D.1994). In *Chamberlin*, evidence was presented that the trooper intended to arrest the driver of the vehicle. *Id.* at 618. The trooper pursued a vehicle at high speed with lights and siren activated. *Id.* When the vehicle stopped and the driver fled on foot, the trooper yelled at the driver to stop, drew his weapon and continued in

pursuit. *Id.* at 619. The court found that from this evidence, a jury could have found Defendant guilty of resisting arrest. *Id.*

However, in this case, Officer Farrow did not use his sirens, pursue the truck at high speed nor did he pursue on foot shouting and wielding a weapon. He followed the truck at a normal speed only activating his lights. We find that on these facts, coupled with the lack of testimony that Officer Farrow actually did intend to arrest the occupants of the truck, the State did not meet its burden and a reasonable juror could not have found that Defendant should have known that he was being arrested. The trial court erred in submitting Count III to the jury and denying Defendant's motion for acquittal on this count.

■■■ The State requests that we remand to the trial court with an order to enter a verdict for misdemeanor resisting arrest and appropriate re-sentencing. In support of this contention, the State cites *State v. Dooley,* which states: When a conviction of a greater offense has been overturned for insufficiency of the evidence, the reviewing court may enter a conviction for a lesser offense if the evidence was sufficient for the jury to find each of the elements *and the jury was required to find* those elements to enter the ill-fated conviction on the greater offense. 919 S.W.2d 539, 542 (Mo.App. E.D. 1995). This rule does not apply in this case.

■■■ Under the rule, the jury must have been required to find all elements of the lesser offense to convict on the greater offense. *Dooley,* 919 S.W.2d at 542. In this case, though, the jury was not required to find the elements of misdemeanor resisting arrest in order to convict for felony resisting arrest. For misdemeanor resisting arrest, the jury· would be required to find that Officer Farrow was making an investigatory stop of Defen-

dant, Defendant knew he was making a stop, and that for the purpose of preventing the stop, resisted by fleeing from the officer. *See* MAI–CR 3d 329.61. However, the jury was instructed to find that Officer Farrow was arresting defendant, not stopping or detaining him. The facts needed to determine whether an officer was making a stop versus the facts needed to determine if an officer was making an arrest are different. The jury did not get a chance to consider whether Officer Farrow was making a stop. Though the State purports that this is what Officer Farrow was doing, there was no such evidence presented at trial. Thus, the judgment is reversed and the sentence entered for Count III is vacated.

### Prosecutor's Remarks during Closing

Appellant contends that the trial court erred in permitting certain remarks by the prosecutor during closing argument. Those comments will be set forth and analyzed in the order they were argued.

■■■ The trial court has broad discretion in controlling the scope of oral argument and its rulings will not give rise to reversible error absent an abuse of discretion resulting in prejudice to the defendant. *State v. Martin,* 103 S.W.3d 255, 264 (Mo.App. W.D.2003). The trial court's rulings in allowing or rejecting argument of counsel are reversible for an abuse of discretion only where the argument is plainly unwarranted. *State v. Sandles,* 740 S.W.2d 169, 176 (Mo. banc 1987). If the prosecutor's improper remarks were made during rebuttal argument, the trial court can consider whether the argument was invited. *State v. Murphy,* 739 S.W.2d 565 (Mo.App. E.D.1987).

### I.

■■■ The first remark challenged by defendant was stated during closing argument.

"Now, I told you in jury selection ... that this was not going to be a case in which someone was going to stand up and say, yes, I saw that man ... commit the crime ... you said you didn't need that type of identification ... [s]o I'm holding you to that now ... I told you you weren't gonna get it; you didn't get it, and you said it wouldn't matter."

Defendant alleges that this statement constituted a "call for commitment," requesting the jurors to commit to a "promise" they made during voir dire that they did not need direct evidence to convict. Defendant contends that this comment suggested to jurors that they were required to convict regardless of how tangential the State's case was. He maintains that the comment impermissibly shifted the burden of proof by convincing the jurors that they could convict based on whatever evidence the State presented. During trial, Defendant did not object to this comment, but now requests we review for plain error.

A claim of plain error alleging errors committed in closing arguments does not justify relief on appeal unless determined to have a decisive effect on the jury. *State v. Schlup*, 785 S.W.2d 796, 802 (Mo.App. W.D.1990). A prosecutor's statement has a decisive effect if there is "a reasonable probability that the verdict would have been different had the error not been committed." *State v. Johns*, 34 S.W.3d 93, 116 (Mo. banc 2000). In determining whether reversal is required, the court can consider whether the effect of "multiple errors" in the prosecutor's argument was "cumulative and egregiously prejudicial." *Burnfin*, 771 S.W.2d at 912–13.

The burden is on the defendant to demonstrate the "decisive effect of the statement." *State v. Parker*, 856 S.W.2d 331, 333 (Mo. banc 1993), *cert. denied*, 506 U.S. 1014, 113 S.Ct. 636, 121 L.Ed.2d 566 (1992). For such a decisive effect to occur, "there must be a reasonable probability that, in the absence of these comments, the verdict would have been different." *State v. Roberts*, 838 S.W.2d 126, 132 (Mo.App. E.D.1992). Under Rule 30.20, plain error will seldom be found in unobjected-to closing argument, since a holding that would require the trial judge to interrupt counsel would present myriad problems. *State v. Radley*, 904 S.W.2d 520, 524 (Mo.App. W.D.1995). Trial judges are not expected to assist counsel in trying cases, and trial judges should act *sua sponte* only in exceptional circumstances. *Id.*

Defendant argues throughout his brief that the evidence in this case was thin and lacking and as a result contends that this comment had a decisive effect on the jury. However, as we discussed above, the evidence was sufficient for a reasonable juror to convict Defendant under Counts I and II. Furthermore, we also do not believe the comment was one that would warrant a *sua sponte* interruption of counsel under *Radley*. Accordingly, we find that this statement did not have a decisive effect on the jury and that the trial court did not err in failing to *sua sponte* instruct the jury to disregard the comment.

## II.

Secondly, Defendant claims the statement, "[Mr. Brooks] sat and ... listened to all the evidence that the State presented and he thought in his mind, how could he concoct a story that places him in the shed" was an improper attack on defense counsel. A prosecutor may "comment on the credibility of the defendant as a witness and assert the improbability and untruthfulness of his testimony." *State v. Burnett*, 931 S.W.2d 871, 875 (Mo.App. W.D.1996). However, personal attacks by the prosecutor on defense counsel are im-

proper and objectionable. *State v. Reyes,* 108 S.W.3d 161, 170 (Mo.App. W.D.2003).

Defendant argues that suggesting that Defendant concocted the defense during trial was denigrating to both Defendant and defense counsel. Because appellant did not object to the prosecutor's remarks at trial on the grounds that they denigrated defense counsel, this particular issue is not preserved for appellate review because the grounds asserted on appeal are limited to those stated at trial. *State v. Ellsworth,* 908 S.W.2d 375, 378 (Mo.App. E.D.1995). Appellant may not broaden the objection presented to the trial court, or rely on a theory different than the one offered at trial. *Id.* Where the grounds have been changed on appeal, nothing has been preserved for review. *Id.* Because appellant's theory on appeal is different from the objection he asserted at trial, reversal would be appropriate only if the appellate court finds plain error. *State v. McKibben,* 998 S.W.2d 55, 60 (Mo.App. W.D.1999).

As stated above, a claim of plain error alleging errors committed in closing arguments does not justify relief on appeal unless it is determined to have a decisive effect on the jury and there is "a reasonable probability that the verdict would have been different had the error not been committed." *Johns,* 34 S.W.3d at 116.

The argument that this comment was denigrating to defense counsel is tenuous at best. We are not persuaded the State was even making reference to defense counsel. The defense attorney was not mentioned, directly or indirectly. Essentially, the Defendant urges us to find that the comment *implicitly* accused defense counsel of taking part in "concocting" the defense. However, under that reasoning, any time the State referred to possible misconduct of a defendant during trial, it would be making an implicit attack on

defense counsel. We find that the State's argument that appellant "concocted" a story was not an attack on defense counsel, but was a permissible argument as to Defendant's credibility. *See State v. Rath,* 46 S.W.3d at 604, 609 (Mo.App. S.D.2001). As the comment was not improper, failing to instruct the jury *sua sponte* to ignore the comment was not plain error.

### III.

Third, appellant argues that the statement "Where is Lisa Chapman? ... don't be fooled because the defense has the same power that the State does to subpoena witnesses and get them into court" shifted the burden of proof to defendant to prove he did not commit the charged crimes and created a false issue. Defendant relies on his contention that the State's evidence was weak and there is a reasonable possibility the jury's verdict would have been different if the court had sustained defense counsel's objection.

Again, the Defendant's argument has not been preserved for appeal. Grounds asserted on appeal are limited to those stated at trial and appellant cannot rely on a theory different than that offered at trial. *Ellsworth,* 908 S.W.2d at 378. Because appellant did not object to the prosecutor's remarks at trial on the grounds that they shifted the burden of proof, but rather on relevance, this particular issue is not preserved for appellate review. Furthermore, we construe the remark in the present case as a comment on the absence of evidence and the weakness of Defendant's theory of the case. In addition, this comment was invited by defense counsel. Although, as Defendant argues, defense counsel did not mention Ms. Chapman's absence at trial during closing argument, there were several references to her in the argument that appellant's story of how he came to be hiding in the

shed was believable. "A prosecutor has considerable leeway to make retaliatory arguments in closing. A defendant may not provoke a reply and then assert error." *Middleton v. State*, 80 S.W.3d 799, 814 (Mo. banc 2002).

## IV.

■ Lastly, appellant argues that an improper argument was made when the prosecutor stated during closing:

> Now, you may be asking yourself, why should I care about this case? It's a cigarette store ... Stealing is a major problem in this city ... People are fed up ... And what do they do? They leave. They go to St. Louis County.

### A.

■ Arguments that appeal to the jury to convict the defendant to prevent him from committing future crimes of the same nature are improper. *Murphy*, 739 S.W.2d at 571 (finding argument that "we don't need burglary in this town ... and we don't need [the defendant] committing burglary ... you really, really need to put a stop to it" improper but not plain error). Likewise, a prosecutor's argument of facts outside the record "is highly prejudicial." *State v. Storey*, 901 S.W.2d 886, 900 (Mo. banc 1995). Furthermore, "[t]he prosecutor may not personalize his argument to the jury." *State v. Raspberry*, 452 S.W.2d 169, 172 (Mo. banc 1970). A prosecutor improperly personalizes argument when he "asks the jurors to place themselves or some other identifiable person in the shoes of the victim or at the crime scene." *Hall v. State*, 16 S.W.3d 582, 585 (Mo. banc 2000). However, the prosecutor is permitted to argue general propositions regarding the prevalence of crime in the community, the personal safety of the community's citizens, and the jury's duty to uphold the law. *State v. Plummer*, 860 S.W.2d 340, 350 (Mo.App. E.D.1993).

Defendant argues that the prosecutor personalized the argument and claimed knowledge of facts outside the record. He submits that this comment is an impermissible personalization. Defendant also maintains that by telling the jury they should show they care about the "major problem" of stealing in the City of St. Louis by convicting Mr. Brooks, the prosecutor suggested that Mr. Brooks should be held responsible for all the theft in the City and personally deterred from committing future crimes.

We disagree. The comment in this case was not an improper personalization. The State did not ask the jury to put themselves in the place of the cigarette store owner or any other identifiable person involved in the crime. The general question "[W]hy should I care" did not put the jury "in the shoes" of the victim or at the crime scene. Instead, it was a plea to the jurors to uphold the law regardless of what they think about cigarette stores. As for the argument that this comment improperly implies that Defendant should be personally deterred from committing future crimes, neither the Defendant nor deterrence was mentioned. The statement was very general and we are not persuaded that in any way was it a comment on personally deterring the defendant from committing future crimes.

### B.

■ Defendant also asserts that the suggestion that crime is the impetus for any shifting of the area's population from the City of St. Louis to St. Louis County is unsupported by evidence and totally irrelevant to the issues before the jury. While this may be true, the argument was not preserved for appellate review. Under plain error review we must determine if

the alleged error during closing argument had a decisive effect on the jury. *Schlup,* 785 S.W.2d at 802. A prosecutor is granted substantial latitude and may argue matters of common knowledge. *See, State v. Jones,* 7 S.W.3d 413, 419 (Mo.App. E.D. 1999).

As we have stated above, there was sufficient evidence to convict Defendant on Counts I and II. This comment did not have a decisive effect on the jury. Though the relevance of the general statement made by the prosecutor about the shifting population of the city was questionable, it was not plain error for the judge to fail to instruct the jury to ignore the comment *sua sponte.* Point IV is denied.

The conviction for Counts I and II is affirmed. The conviction for Count III is reversed and the sentence is vacated.

CLIFFORD H. AHRENS, P.J., and GLENN A. NORTON, J., concur.